

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2006

# Atkinson v. Lafayette College

Precedential or Non-Precedential: Precedential

Docket No. 03-3426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Atkinson v. Lafayette College" (2006). *2006 Decisions*. Paper 507.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/507

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 03-3426

———————

EVE ATKINSON,

Appellant

v.

LAFAYETTE COLLEGE;
ARTHUR J. ROTHKOPF, ESQUIRE, Individually
and as President of Lafayette College

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-02141)
District Judge: Honorable Ronald L. Buckwalter

———————

Argued March 9, 2006

Before: AMBRO and BECKER, [*]<u>Circuit Judges</u>,
STAGG,[**] <u>District Judge</u>

(Opinion filed   August 21, 2006  )

Alan B. Epstein, Esquire (Argued)
Jennifer L. Myers, Esquire
Spector, Gadon & Rosen P.C.
1635 Market Street
Seven Penn Center, 7th Floor
Philadelphia, PA    19103

      Counsel for Appellant

John G. Harkins, Jr. (Argued)
Neill C. Kling, Esquire
Harkins Cunningham
2005 Market Street
2800 One Commerce Square
Philadelphia, PA   19103-7042

Barry Simon, Esquire

---

[*]This case was argued before the panel of Judges Ambro, Becker, and Stagg.  Judge Becker died before the filing of this Opinion.  It is filed by a quorum of the panel.  28 U.S.C. § 46(d).

[**]Honorable Tom Stagg, District Judge for the Western District of Louisiana, sitting by designation.

Dara P. Newman, Esquire
Simon Moran
1600 Market Street, Suite 2020
Philadelphia, PA   19103-7218

Counsel for Appellees

Dina R. Lassow, Esquire
Jocelyn Samuels, Esquire
National Women's Law Center
11 DuPont Circle, N.W., Suite 800
Washington, DC   20036

Counsel for Amici-Appellants

R. Alexander Acosta
   Assistant Attorney General
Kenneth Marcus
   Senior Counsel, Office for Civil Rights
Brian W. Jones
   General Counsel
Dennis J. Dimsey, Esquire
Lisa W. Edwards, Esquire
Department of Justice
Civil Rights Division
Appellate Section – PHB 5026
950 Pennsylvania Avenue, N.W.
Washington, D.C.   20530

Counsel for Amicus-Appellant

STAGG, District Judge

In the fall of 1989, Dr. Eve Atkinson ("Atkinson") applied to Lafayette College for the position of "Director of Athletics and Professor and Head, Physical Education and Athletics." She learned of the position from Olav Kollevoll ("Kollevoll"), the departing Director of Athletics at Lafayette College, who had been hired by the College in 1965. Atkinson was hired in December of 1989. Her appointment letter provided, in pertinent part:

> . . . [Lafayette College] is pleased to appoint you to the position of Director of Athletics and Professor and Head, Physical Education and Athletics, effective January 29, 1990, with term thereafter at the pleasure of the President of the College and the Board of Trustees. It is further understood that your initial appointment will be through June 30, 1992, and following that period that you would be subject to the procedures for due notice as apply to the faculty which would ensure you a minimum of one year's notice.

4

Atkinson's employment continued after her initial two and one-half year term. Each year, she received salary letters advising her of an annual increase.

In addition to her appointment letter, the Lafayette College Faculty Handbook and the Statutes of Lafayette College provided further guidance as to the terms and conditions of employment for faculty members. Regarding tenure, the Faculty Handbook stated:

> B. <u>Tenure</u>. Tenure as described in the following paragraphs is defined as continuity of service, the institution having relinquished the freedom it normally possesses to terminate appointment, except for cause and subject to provision of the College with respect to retirement.
>
> 1. <u>Professors</u> shall have tenure except on an initial appointment to the Lafayette College Faculty. Such initial appointment may be with tenure or for a period not to exceed three years. This appointment shall be followed by appointment with

5

tenure or termination of employment.

. . .

5. Notification about Tenure Status. For those not on tenure a decision must be reached by September 1 of the last probationary year as to whether or not tenure will be granted, and the individual must be notified of this decision. In no case, however, will tenure be granted by default. It is the responsibility of the individual concerned to notify his Department Head of a failure to receive written notification with regard to his continued employment.

From the inception of her employment, Atkinson raised issues of gender equality in the Lafayette College athletic program. In January of 1996, Atkinson specifically raised the issue in the context of the College's athletic budget. As a result of this instance and her continuing efforts, Atkinson claims that she was subjected to gender discrimination by her supervisor, Lafayette College's Dean of Students, Herman Kissiah ("Kissiah"), and that she was subjected to unlawful retaliation,

6

ultimately resulting in her termination.

On November 4, 1999, the President of Lafayette College, Arthur J. Rothkopf ("President Rothkopf"), formally notified Atkinson of his decision to terminate her employment.[1] In his termination letter to Atkinson, President Rothkopf expressed his belief that the Lafayette College Athletic Department would benefit from new leadership.[2]

Believing that she was a tenured member of the faculty, Atkinson attempted to appeal President Rothkopf's decision. In a letter to him dated November 22, 1999, Atkinson acknowledged that she was given proper notification of her termination from the position of Athletic Director, but argued that, as a tenured professor, she could not be terminated from her faculty position without cause. President Rothkopf refused to accept her claim of tenure and, by letter dated December 13, 1999, explained that Atkinson had never been a tenured member

---

[1]The termination was to be effective approximately one and one-half years later, on June 30, 2001, due to the notice required by Lafayette College's procedures. A male succeeded Atkinson as Director of Athletics.

[2]In answers to interrogatories, President Rothkopf expounded by stating, inter alia, that he believed that Atkinson's leadership and management skills were deficient and that her management style alienated others, and led to poor relations and low morale.

of the faculty, but instead served at the "pleasure of the President," as stated in her initial appointment letter.

On January 6, 2000, Atkinson wrote a second letter to President Rothkopf, further detailing why she felt she was a tenured member of the faculty and requesting a hearing by the faculty tenure review appeals committee. President Rothkopf again responded by letter, explaining that "[s]erving 'at the pleasure of the President of the College and the Board of Trustees' is inherently at odds with the 'tenure' you are now claiming for the first time." He thus denied her request for a hearing.

On February 18, 2000, Atkinson wrote a letter to the Provost of the College, Dr. June Schlueter ("Provost Schlueter"), reasserting Atkinson's perceived right to remain in her position as a tenured member of the faculty and requesting a faculty appeal. Provost Schlueter responded by stating that she could neither accept Atkinson's claim to have tenure nor act upon her request for a faculty appeal, because her appointment letter expressly stated that she served at the pleasure of the President and the Board.[3]

---

[3]In a declaration attached to the defendants' motion for summary judgment, Schlueter also noted that two separate sets of minutes from the Appointments, Promotions and Dismissals Committee of 1989 stated that the position of Athletic Director and Professor of Physical Education would be a twelve month

In none of these written exchanges with the President or the Provost did Atkinson mention an argument she claims to have had with her supervisor, Kissiah, on November 18, 1998. According to Atkinson, on that date, Kissiah became enraged as a result of differing opinions regarding athletics funding and stood over her with his fists raised. Atkinson does, however, claim that she immediately met with Lafayette College's Vice President of Human Resources and General Counsel, and President Rothkopf, following the incident and informed them of such, stating that she was discriminated against because of the allocations she wanted to make to the men's and women's sports programs. Atkinson argues that, as a result of these complaints, she was subjected to retaliation. For example, in April of 1999, Atkinson was relieved of her duties as supervisor of intramurals and recreation, a significant component of her position.

On May 2, 2000, Atkinson filed a complaint under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. § 951 *et seq.* The complaint, filed with Pennsylvania's Human Relations Commission ("PHRC"), challenged her termination and the denial of her tenure status and requested faculty appeals. In it, Atkinson alleged that she was terminated and denied a faculty appeal based on her gender and Lafayette College's pattern and practice of discharging qualified female

administrative position with faculty rank and status but without tenure at the time of the appointment or in the future.

employees, and that similarly situated males had not been terminated or had the status of their tenure denied under similar circumstances. She did not allege retaliation in her PHRC complaint, which was also filed with the federal Equal Employment Opportunity Commission ("EEOC").

On July 10, 2000, Atkinson responded to an EEOC questionnaire concerning her employment claim by submitting a verified document entitled "Allegations of Employment Discrimination," wherein she stated that the basis for her charge was sex, retaliation and age. Atkinson's allegation of sex discrimination was that she was treated differently from similarly situated males. She further alleged that her "notice of termination [was] retaliation against her for her insistence that Title IX antidiscrimination law be followed, i.e., that additional financial funding and personnel be given to the women's sports programs."

Atkinson then filed suit in the Eastern District of Pennsylvania. Thereafter, the defendants filed a motion to dismiss. The District Court granted the defendants' motion for partial dismissal as to Atkinson's retaliation claims under Title IX, finding that under Alexander v. Sandoval, 532 U.S. 275, 121 S. Ct. 1511 (2001), there was no private right of action to enforce such claims. The District Court further granted the defendants' motion for partial dismissal on Atkinson's claims of breach of contract and Title VII claims against President Rothkopf individually. The defendants then moved for

10

summary judgment as to all of Atkinson's remaining claims, which was granted in its entirety.

## A.    Standard Of Review.

We have jurisdiction under 28 U.S.C. § 1291.  Our standard of review of the District Court's dismissal under Rule 12(b)(6) is plenary.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  Our review of a grant of summary judgment is also plenary, and we must grant all reasonable inferences from the evidence of the non-moving party.  See Anderson v. Consol. Rail Corp., 297 F.3d 242, 246-47 (3d Cir. 2002).

## B.    Title IX.

The United States Supreme Court decided the case of Jackson v. Birmingham Board of Education, 544 U.S. 167, 125 S. Ct. 1497 (2005), on March 29, 2005, holding that Title IX's private right of action encompasses claims of retaliation against an individual because he or she has complained about sex discrimination.  The basis for the District Court's dismissal in Atkinson's case for failure to state a claim for relief under Title IX is inconsistent with the decision in Jackson.  Accordingly, the dismissal of Atkins's Title IX retaliation claim must be vacated and the case remanded for further proceedings consistent with Jackson.

11

## C.      Breach Of Contract.

Atkinson contends that Lafayette College breached her contract of employment by terminating her.  In interpreting a contract, a court must first consider the "intent of the parties as expressed in the words used in the agreement."  Martin v. Monumental Life Ins. Co., 240 F.3d 223, 232-33 (3d Cir. 2001) (citing Mellon Bank, N.A. v. Aetna Bus. Credit, 619 F.2d 1001, 1009 (3d Cir. 1980)).  Where the language is clear and unambiguous, the express terms of the contract will control.  See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92-93 (3d Cir. 2001).  The court can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted "is subject to only one reasonable interpretation."  Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999) (citations omitted).

Atkinson's appointment letter clearly provides that the *term* (singular) of her *position* (singular) is "at the pleasure of the President of the College and the Board of Trustees."   This language expressly negates any possibility of tenured status as a faculty member.

Atkinson, however, argues that the word "and" separates the three aspects of her position--Director of Athletics, Professor, and Head, Physical Education and Athletics--and, thus, that the position of professor was a separate and individual

12

position.[4]  She contends that the words "at the pleasure of the President of the College and the Board of Trustees" refer only to her roles as Director of Athletics and Department Head, rather than to her position as a professor.

Simply stated, Atkinson's attempt to construe her appointment letter to provide that she was entitled to tenure is an attempt to create ambiguity where there is none.  The appointment letter expressly provides that, after the initial two and one-half years, her appointment would lack a defined temporal period, stating that "following that [initial] period you would be subject to the procedures for due notice as applied to the faculty which would insure you a minimum of one year's

---

[4]A finding that the appointment letter is unambiguous, which the wording of the appointment letter necessitates, negates the use of parol evidence, which Atkinson sought to use in support of her argument.  For example, one of the many items outside of the four corners of her appointment letter upon which Atkinson attempts to rely is a draft report from the Promotion, Tenure and Review Committee of Lafayette College, wherein two members of the committee indicated their belief that Atkinson was entitled to tenure or, at a minimum, an appeal.  However, this conclusion by two members of the committee was reached in a draft report, *prior to* either member having reviewed Atkinson's appointment letter.  Thus, neither this, nor any of her other arguments, overcomes the clearly unambiguous wording of her appointment letter.

13

notice."[5]

In short, the language of Atkinson's appointment letter is clear and unambiguous. It unequivocally provides that she was to serve at the pleasure of the President of the College and its Board of Trustees. She cannot now revise the words of her employment letter into a document that provides a position that was guaranteed tenure. Nor can she somehow claim to have received tenure by default, as Lafayette College's provisions on tenure *clearly* do not allow tenure to occur simply by inaction. See Lafayette College Faculty Handbook, supra, at 3-4 ("In no case, however, will tenure be granted by default."). Thus, the

[5]In a further attempt to interpret the unambiguous language of her contract, Atkinson also refers us to her predecessor's appointment letter and subsequent treatment to illustrate that a male received tenure when she did not. However, this reliance only serves to highlight the differences between Kollevoll and Atkinson. Kollevoll's letter specifically applied the language "with term at the pleasure of the President of the College" *only to* his appointment as Director of Athletics and Physical Education. His letter further stated, in a separate clause, that he was appointed "as Professor of Physical Education for a term of five years (1965-70)." Finally, Kollevoll's appointment letter specifically held open the possibility of faculty tenure, providing that "reappointment beyond the initial term would normally involve decision on continuous tenure in the professional position." These provisions were noticeably absent from Atkinson's letter.

District Court correctly concluded that Atkinson's claim for breach of contract could not survive summary judgment.

### 3.    Retaliation.

Atkinson next alleges that the defendants retaliated against her, in violation of Title VII and the PHRA, for opposing practices of gender discrimination. Generally, before filing a Title VII suit, an employee must file a complaint with the EEOC to attempt to resolve the dispute before involving litigation. See Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). The District Court granted summary judgment in favor of the defendants on Atkinson's retaliation claims under Title VII and the PHRA, finding that she had failed to exhaust her administrative remedies for these claims.

This Court has held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). As already noted, Atkinson failed to mention retaliation in her PHRC complaint, but she did include it in her response to the EEOC questionnaire, which clarified that the retaliation she allegedly suffered stemmed only from her opposition to gender inequity in the funding of sports programs at Lafayette College. The District Court found this type of retaliation constituted retaliation under Title IX, but that Title VII's prohibition against

15

retaliation did not cover that type of funding activity, citing Lamb-Bowman v. Delaware State University, 39 F. App'x 748, 750 (3d Cir. 2002).

Atkinson's Title VII retaliation claims were properly dismissed by the District Court because the allegations in her complaint did not fall "fairly within the scope of the . . . EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). The criticisms made by Atkinson pertained only to the treatment of coaches of women's sports, as opposed to the treatment of coaches who were women. As such, Atkinson's retaliation claim is more properly characterized as a claim predicated on activities in support of Title IX, rather than a claim predicated on activities protected under Title VII. Accordingly, the District Court committed no error in entering summary judgment for the defendants on Atkinson's retaliation claim.

## D. Gender Discrimination Claims.

Title VII prohibits employers from engaging in discrimination on the basis of race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2. To prevail on a claim for sex discrimination under Title VII or its analogous provision in the PHRA,[6] Atkinson must satisfy the three-step burden-

---

[6]Claims under the PHRA are interpreted coextensively with Title VII claims. See Kelly v. Drexel Univ., 94 F.3d 102,

16

shifting inquiry under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 93 S. Ct. 1817 (1973).[7]  First, she must establish a prima facie case of sex discrimination.  If she succeeds, the burden shifts to Lafayette College to advance a legitimate, non-retaliatory reason for its action.  <u>See</u> <u>id.</u> at 802-03, 93 S. Ct. 1817.  If the College advances such a position, the burden shifts back to Atkinson to prove that the non-discriminatory explanation is merely a pretext for discrimination.  <u>Id.</u> at 804, 93 S. Ct. 1817.

This Court will assume, without deciding, that Atkinson established a prima facie case of discrimination.  Atkinson does not contest that Lafayette College articulated legitimate, nondiscriminatory reasons for each of the actions alleged to have been discriminatory--her termination, the denial of her claim to have tenure and the denial of her request for a faculty appeal.  Thus, the burden shifts back to Atkinson to prove that the reasons articulated by Lafayette College[8] were pretextual.

_____

105 (3d Cir. 1996).

[7]Because Atkinson seeks to establish her gender discrimination claim through indirect evidence, we follow the evidentiary framework set forth in <u>McDonnell Douglas</u>.

[8]With respect to termination, President Rothkopf's November 4, 1999 letter to Atkinson explained that he had concluded that the Athletic Department needed new leadership. With respect to Atkinson's claim that she was entitled to tenure,

17

We have recognized two ways in which a plaintiff can prove pretext. First, the plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). Second, and alternatively, the plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Id. "[T]he nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-09 (3d Cir. 1997) (citation omitted). The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." Id. at 1109. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Id. (citation omitted).

---

President Rothkopf explained that it was wholly inconsistent with the terms of her appointment letter. Similarly, with respect to the denial of Atkinson's request for a faculty appeal, the terms of her appointment letter removed the issue from the faculty's consideration.

Atkinson has failed to challenge President Rothkopf's reasons for her termination. Instead, she suggests that President Rothkopf's beliefs about her management style and inadequacies were influenced by Kissiah, with whom she allegedly had an argument twelve months earlier (prior to receiving notice of her termination), and who she alleges is "harder on females." This is pure conjecture and is wholly insufficient. Furthermore, Atkinson does not raise any genuine issues of material fact that the reason given by President Rothkopf and Provost Schlueter for not recognizing her as having tenure (the language of her employment agreement) was pretextual. Instead, she essentially contends that because her predecessor, Kollevoll, had tenure, then she had tenure. However, as previously mentioned, her appointment was clearly not comparable to Kollevoll's. Finally, Atkinson's pretext argument regarding the availability of a faculty appeal is similarly flawed. She contends that another faculty member was given an appeal when she was not. However, she fails to note the fundamental distinction of the specific language of her appointment letter, which rendered faculty interference with her termination inappropriate.

Faced with legitimate, non-discriminatory reasons for Lafayette College's actions, the burden of proof rested with Atkinson to demonstrate that the reasons proffered were pretextual and that gender was a determinative factor in the decisions. See Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000). She has failed to satisfy her burden. The District Court

correctly found that Atkinson failed to point to any evidence that demonstrated weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in Lafayette College's reasons for its employment decisions. A reasonable jury could not find that Atkinson's gender played a role in the decisions at issue.[9]

**E.     Conclusion.**

The District Court's ruling dismissing Atkinson's claim under Title IX is reversed and remanded in accordance with Jackson v. Birmingham Board of Education, 544 U.S. 167, 125 S. Ct. 1497 (2005). We affirm its rulings in all other respects.

---

[9]Atkinson's claims for sex discrimination appear to be focused upon her advocacy of Title IX issues, and are more appropriately considered as Title IX claims, which she will now have a chance to fully explore before the District Court.

20