

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2008

# Boccone v. Eichen Levinson LLP

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Boccone v. Eichen Levinson LLP" (2008). *2008 Decisions.* Paper 135.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/135

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 07-1205 and 07-1842

———————

PAUL P. BOCCONE,
                                        Appellant

v.

EICHEN LEVINSON LLP,
a New Jersey Limited Liability Partnership;
BARRY R. EICHEN, individually;
DANIEL R. EPSTEIN, individually

v.

AMERICAN SAFETY CASUALTY INSURANCE COMPANY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 04-cv-03871)
District Judge:  The Honorable Stanley R. Chesler

———————

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

———————

Before:  BARRY, CHAGARES, <u>Circuit Judges</u>, and COHILL,[*] <u>District Judge</u>

(Opinion Filed: December 10, 2008)

———————

---

[*]  Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

OPINION

BARRY, <u>Circuit Judge</u>.

These consolidated appeals arise from an action in which pro se plaintiff, Paul Boccone, sought money damages from the law firm of Eichen, Levinson, LLP, and two of its attorneys, Barry R. Eichen and Daniel R. Epstein (collectively "defendants" unless separately identified)[1] for failure to satisfy an outstanding child support judgment against Boccone's ex-wife before disbursing substantial settlement monies to her in violation of New Jersey's child support judgment lien statute. *See* N.J.S.A. § 2A:17-56.23b. Defendants carried professional liability insurance provided by the American Safety Casualty Company ("American Safety"), and sought a defense and indemnification against Boccone's claims. American Safety denied coverage on the ground that the complaint indicated that defendants' conduct was intentional, and intentional acts were expressly excluded under the policy. Defendants subsequently filed a third-party action against American Safety, claiming breach of contract and breach of the duty of good faith.

The District Court granted defendants' motion for summary judgment on Boccone's claims, after concluding that defendants had fulfilled their obligations (albeit

---

[1] In an effort to distinguish the attorneys from the law firm, each reference to an attorney will be preceded by "Mr."

belatedly) under the child support judgment lien statute. The Court likewise granted summary judgment on defendants' third-party claims, concluding that American Safety breached its obligation to provide coverage and awarding $38,286.62 in damages. We will affirm.

## I.

A. *Boccone's Claims*. It is undisputed that Boccone is owed a substantial amount of unpaid child support by his ex-wife Roxanna Godlewski.[2] Defendants represented Godlewski in several matters. Mr. Eichen represented her in a personal injury action that arose from a serious automobile accident, and Mr. Epstein handled her child custody and child support matters. At some point prior to June 2004, Mr. Eichen began representing Godlewski in a second personal injury action.

On May 1, 2000, the first personal injury action settled for $230,000 and on May 3, 2000, defendants disbursed $115,436.87 to Godlewski. Defendants failed, however, to determine whether Godlewski was a child support debtor (she was) before disbursing the award in violation of the New Jersey child support judgment lien statute.[3] That

---

[2] In a consent order entered in the Superior Court of New Jersey on January 25, 2006, Boccone and Godlewski agreed that Godlewski was $125,611.47 in arrears on her child support payments as of that date. (Plaintiff's Appendix at 127.)

[3] N.J.S.A. § 2A:17-56.23b reads, in relevant part:

> a. A judgment for child support entered . . . and docketed with the Clerk of the Superior Court shall be a lien against the net proceeds of any settlement negotiated prior or subsequent to the filing of a lawsuit . . . . The lien shall stay the distribution of the net proceeds to the prevailing party or

3

determination would not have been difficult, given that Godlewski's child support matter was being handled by Mr. Epstein. Defendants contend that they discovered the outstanding judgment lien against Godlewski around May 2002 and began taking steps to satisfy the lien, first disbursing $5,000 to Boccone on May 8, 2002. On September 28,

---

beneficiary until the child support judgment is satisfied.
. . . .

b. Before distributing any net proceeds of a settlement, judgment, inheritance or award to the prevailing party or beneficiary:
. . . .

> (2) the attorney representing the prevailing party or beneficiary shall initiate a search of child support judgments, through a private judgment search company that maintains information on child support judgments, to determine if the prevailing party or beneficiary is a child support judgment debtor.
> . . . .

c... . If the certification shows that the prevailing party or beneficiary is a child support judgment debtor, the attorney . . . shall contact the Probation Division of the Superior Court to arrange for the satisfaction of the child support judgment. The attorney . . . shall notify the prevailing party . . . of the intent to satisfy the child support judgment prior to the disbursement of any funds to the prevailing party or beneficiary. Upon receipt of a warrant of satisfaction for the child support judgment, the attorney . . . shall pay the balance of the settlement, judgment, award or inheritance to the prevailing party or beneficiary.
. . . .

e. An attorney . . . who, in accordance with this act, satisfies a child support judgment from the net proceeds of a settlement . . . shall not be liable for payments which otherwise would have been made pursuant to section a. of this section which were not so identified to the attorney . . . at the time of satisfaction.

4

2002, Mr. Eichen wrote the Middlesex County Probation Division to determine the amount of the outstanding child support judgment as of the date of the settlement. The Probation Division responded that, as of May 1, 2000, Godlewski owed a total of $19,600.34. Defendants then remitted $20,000 to the Probation Division, accompanied by proof of the earlier $5,000 payment, and requested that the lien be adjusted accordingly. Although Boccone initially refused to accept payment and refused to sign a warrant of satisfaction of the lien, the funds were ultimately released to him by court order.

The second personal injury action was settled in June 2004 for $75,000. Following the settlement, defendants conducted a child support judgment lien search, which revealed that Godlewski was $8,692.84 in arrears on the child support judgment against her. Defendants made a payment in that amount to the Probation Division on July 6, 2004. Boccone again refused to sign a warrant of satisfaction and would not accept the money; instead, he informed the Probation Division that he would challenge the amount of the child support lien in court.

On July 12, 2004, Boccone filed this action in the United States District Court for the District of Maryland; the case was subsequently transferred to the District of New Jersey. The initial complaint alleged that defendants committed fraud by intentionally concealing the first settlement award and disbursing that award to Godlewski, and conversion by disbursing the second settlement award to Godlewski without first satisfying the child support lien. On April 10, 2006, Boccone amended the complaint to

5

add a negligence claim, which alleged that defendants negligently distributed both personal injury awards to Godlewski despite knowledge that she had substantial child support debts, in violation of N.J.S.A. § 2A:17-56.23b.

The District Court granted summary judgment in favor of defendants and against Boccone, finding that: "Mrs. Godlewski's outstanding child support arrears were paid by [d]efendants over two-and-a-half years after they should have paid. Plaintiff, however, cannot complain of any injury or loss sustained as a result of the lateness...[because] [d]efendants' full payment of the child support arrears included [any] statutory interest that had accrued." (Third-Party Defendant's Appendix at 15.)

B. *Defendants' Third-Party Claims.* At all relevant times, defendants carried professional liability insurance provided by American Safety under policy number 10PCM-PF-01522-03 (the "policy").[4] Defendants were served with Boccone's complaint on August 26, 2004, and the next day Mr. Eichen wrote American Safety seeking a defense against Boccone's claims. Mr. Eichen's letter asserted that the "lawsuit [arose] out of an allegation that [defendants] neglected to disclose the amount of a settlement to a

---

[4] The policy states, in relevant part, that:

> The [c]ompany will pay on behalf of the [i]nsured all damages that the [i]nsured becomes legally obligated to pay as a result of any [c]laim first made against the insured during the [p]olicy period...for any actual or alleged act, error, omission, or [p]ersonal [i]njury resulting from the performance of [p]rofessional services.

(*Id.* at 91.) Additionally, "[t]he company shall defend any [c]laim to which this insurance applies, even if any of the allegations of the claim are groundless, false or fraudulent." *Id.*

third party," and reflected his belief that the lawsuit was a "retaliatory and frivolous" response to Boccone's distaste for defendants' representation of his ex-wife. *Id.* at 58. American Safety denied coverage, noting that "[a] reading of the complaint indicates that your conduct was intentional," and thus within a policy exclusion. *Id.* at 60.[5] Mr. Eichen responded that "[a]lthough the complaint is couched in terms of intentional acts, the language of [the] [c]omplaint is clearly construable in terms of negligence and/or in terms of an accidental occurrence which would be covered under the policy." *Id.* at 62. American Safety continued to deny coverage, and on June 23, 2005, defendants filed a third-party complaint. Defendants claimed that American Safety breached the policy by "failing and refusing to perform its promise to defend and indemnify...under the terms and conditions of [the] policy," and sought money damages and declaratory relief. *Id.* at 71. Defendants also alleged that American Safety denied coverage in bad faith.

Defendants again sought coverage after Boccone amended his complaint to include a negligence count. American Safety responded, by letter dated May 10, 2006, that it had "not changed its position with regard to" Boccone's initial complaint, and that it was reviewing the negligence count with the expectation that it would not "be entering a defense." (*Id.* at 121.) The letter indicated that "no definitive decision [had] been

---

[5] The policy expressly excludes coverage of "[d]amages or [c]laim expenses in connection with any [c]laim...arising out of any dishonest, fraudulent, criminal, intentional or malicious act, error, omission, or [p]ersonal [i]njury or deliberate misrepresentation committed by or at the direction of, or with knowledge of the [i]nsured." (*Id.* at 93.)

reached," *id.*, and American Safety never provided defendants with a final determination

regarding a defense against the negligence claim.

The District Court found that, "as a matter of law, American Safety lacked a

reasonable basis to deny coverage." *Id.* at 23.

## II.

The District Court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332,

and we have jurisdiction pursuant to 28 U.S.C. § 1291.[6] We exercise plenary review of a

grant of summary judgment. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 451 (3d Cir.

2006). Summary judgment is appropriate if there is "no genuine issue as to any material

fact," and the party making the motion "is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.

A. *Boccone's Appeal*. Boccone asserts that the District Court erred by: (1) failing

to give "full faith and credit" to the consent order that he entered into with Godlewski in

New Jersey Superior Court on January 25, 2006; (2) misinterpreting New Jersey's child

---

[6] Summary judgment was granted in favor of defendants on December 26, 2006, but the District Court did not enter a final order until February 21, 2007 after it calculated damages on the third-party claims. Boccone prematurely filed his notice of appeal on January 23, 2007. Faced with similar circumstances in *DL Resources v. FirstEnergy Solutions, Corp.*, we noted that the notice of appeal was premature, but held that it "ripened...when the District Court entered the amended judgment order granting the damage award." 503 F.3d 209, 213 (3d Cir. 2007); *see Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501, 505 (3d Cir. 1995) (holding that "this Court may entertain an appeal from a nonfinal order if an order which is final is subsequently entered before our adjudication on the merits").

support lien statute; (3) concluding that the child support lien was satisfied by defendants' $25,000 payment; and (4) failing to address his claim that because defendants allegedly violated several New Jersey Rules of Professional Conduct, they should be liable for Godlewski's outstanding child support debt. Boccone's assertions are without merit.

The January 25, 2006 consent order is immaterial to this case. Boccone nonetheless argues that the order, entered more than five years after the resolution of Godlewski's first personal injury action (and more than two years after defendants' $25,000 payment to him), establishes that he was owed $100,000 more than he was paid by defendants. New Jersey's child support lien statute states otherwise: "[a] judgment for child support *entered*...and *docketed* with the Clerk of the Superior Court shall be a lien against the net proceeds of any settlement . . . ." N.J.S.A. § 2A:17-56.23b(a) (emphasis added); *see Simpkins v. Saiani*, 811 A.2d 474, 479 (N.J. Super. Ct. App. Div. 2002) (holding that statute "pertains to docketed child support judgments, rather than arrearages"). Godlewski's first personal injury action settled on May 1, 2000, and on that date her child support case docket reflected that she owed $19,600.34. The amount Godlewski owed in 2006 has nothing to do with whether defendants had complied with N.J.S.A. § 2A:17-56.23b years earlier.

We similarly reject Boccone's assertion that defendants violated N.J.S.A. § 2A:17-56.23b(c) by disbursing both settlement awards to Godlewski despite not receiving warrants of satisfaction indicating that the outstanding child support judgment against her had been paid. Of course, defendants did not receive the warrants because Boccone

9

refused to sign them, believing that he was owed far more than the docketed judgment. The District Court concluded that Boccone "cannot now complain that the statute has been violated to his detriment based on his own refusal to sign the warrant," and that "[h]is challenge of the judgment amount does not impact [d]efendants' performance of their duties." (Third-Party Defendant's Appendix at 15.) We agree.

Next, Boccone argues that the amount defendants owed him on May 1, 2000 – the date of the first settlement – is a question of material fact. The record indicates otherwise. It includes a letter from Mr. Eichen to the Probation Division inquiring as to the balance of child support owed by Godlewski on May 1, 2000, and the Probation Division's response indicating that the balance was $19,600.34. Boccone fails to state why the Probation Division's calculation was wrong, and the record does not indicate any reason to doubt its accuracy. *See* Fed. R. Civ. P. 56(e)(2) ("opposing party may not rely merely on allegations or denials in its own pleading; rather its response must...set out specific facts showing a genuine issue for trial").

Lastly, Boccone contends, erroneously, that the District Court erred by failing to consider his claim that because defendants failed to follow the New Jersey Rules of Professional Conduct, they are liable for Godlewski's unpaid child support. Simply put, the Rules of Professional Conduct "are not designed to be a basis of civil liability." *Baxt v. Liloia*, 714 A.2d 271, 274-75 (N.J. 1998). Even assuming defendants did violate a Rule of Professional Conduct, that violation would "not give rise to a cause of action nor [would] it create any presumption that a legal duty has been breached." *Id.* at 275; *see id.*

10

("no New Jersey case has allowed a cause of action based solely on a violation of the [Rules of Professional Conduct]").  The District Court properly concluded that defendants were entitled to summary judgment.

B.  *American Safety's Appeal*.  American Safety asserts that the District Court erred in granting summary judgment because issues of material fact remain regarding whether its duty to defend was triggered by Boccone's complaint.  We disagree.

In determining whether an insurer has a duty to defend, New Jersey law instructs us to "compar[e] the allegations in the complaint with the language of the policy.  When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992).  "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage."  *Id.* (citing *Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group*, 557 A.2d 693 (N.J. Super. Ct. App. Div. 1989)).

The District Court found that the complaint triggered coverage, noting that although Boccone "couche[d] his claims in terms of fraud and deceit," his complaint "essentially state[d] a claim for breach of the duty imposed by the child support judgment lien statute, that is, defendants did not do what the statute required and satisfy the child support judgment lien out of the settlement proceeds."  (Third-Party Defendant's Appendix at 16.)  Therefore, the Court held, the underlying claim fell "within the scope of coverage afforded by the policy," *id.*, and that American Safety breached the policy by denying coverage.  We agree.  *See Voorhees*, 670 A.2d at 1259 ("duty to defend...is

11

determined by *whether* a covered claim is made, not by how well it is made") (emphasis in original).

American Safety also challenges the District Court's conclusion that – at least after Boccone amended his complaint to add a negligence claim – the denial of coverage was in bad faith. We agree with the District Court that Boccone's negligence claim undoubtedly fell within the scope of the policy, *see id.*, and that American Safety lacked "a reasonable basis for denying [coverage]." *Picket v. Lloyds*, 621 A.2d 445, 453 (N.J. 1993) (citation and quotation omitted).

**IV.**

For the foregoing reasons, we will affirm the orders of the District Court.