**TRIANCO, LLC, Appellant**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION.**

No. 08–4318.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) on Sept. 17, 2009.

Opinion Filed: Oct. 6, 2009.

Richard D. Gallucci, Jr., Esq., Timothy C. Russell, Esq., Spector, Gadon & Rosen, Philadelphia, PA, for Appellant.

Robert N. Feltoon, Esq., Doran W. Bowe, Esq., Jonathan K.M. Crawford, Esq., Conrad, O'Brien, Gellman & Rohn, Philadelphia, PA, for International Business Machines Corporation.

Before: SLOVITER, FUENTES, and SMITH Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

Trianco, LLC ("Trianco") appeals the District Court's dismissal of the sole remaining count in its complaint against International Business Machines Corporation ("IBM"). For the following reasons, we will affirm the District Court.[1]

### I.

Because we write primarily for the parties, we only discuss the facts and proceedings to the extent necessary for resolution of this case. In May 2005, IBM and Trianco entered into a "Teaming Agreement," through which Trianco would work as a "team member" to assist IBM in submitting a bid proposal, as the potential prime contractor, to install computerized "point-of-sale" checkstand equipment at approximately 280 military commissaries. IBM, which had no prior experience with point-of-sale work at military commissaries, sought out Trianco, which possessed relevant expertise.

The Teaming Agreement obliged IBM to prepare the bid proposal for the prime contract. Trianco, in turn, was obligated to submit to IBM, prior to submission of the bid proposal, its "cost/price" and "technical" proposals for the subcontract work. Trianco was also required to assist in drafting the bid proposal and required to collaborate exclusively with IBM. Trianco prepared the relevant technical plans; its work product included proprietary business information and reflected its substantial experience with similar projects.

Trianco also submitted a proposal to IBM for the pricing of the subcontract work.

IBM received the prime contract on December 30, 2005. It then advised Trianco that its pricing was not competitive and unacceptable. Trianco was asked to "re-bid" its initial pricing and did so "under protest." The new bid was rejected and IBM solicited an alternative bid for the subcontract work.

Trianco filed suit, alleging that IBM breached its fiduciary duty to Trianco and the implied covenant of good faith and fair dealing. Trianco further asserted claims of unjust enrichment, equitable estoppel, and promissory estoppel. The District Court granted IBM's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See Trianco LLC v. Int'l Bus. Machs. Corp.,* 466 F.Supp.2d 600 (E.D.Pa.2006). On April 2, 2008, we affirmed in part and vacated in part the District Court's dismissal of the complaint. *See Trianco LLC v. Int'l Bus. Machs. Corp.,* 271 Fed.Appx. 198 (3d Cir.2008). We remanded the matter for a determination of Trianco's unjust enrichment claim. Although our opinion held that Trianco did not have an enforceable right to receive the subcontract, we declared that this did not mandate that the remainder of the Teaming Agreement be found unenforceable. Given that unjust enrichment is a "quasi-contract claim," the existence of an enforceable agreement could bar this claim.

On remand IBM filed a Renewed Motion to Dismiss Plaintiff's Unjust Enrichment Claim, which the District Court granted. *See Trianco LLC v. Int'l Bus. Machs. Corp.,* 583 F.Supp.2d 649 (E.D.Pa.2008). Trianco appeals this decision.[2]

---

1. The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

2. We exercise plenary review over a district court's dismissal under FED.R.CIV.P. 12(b)(6). *Atkinson v. LaFayette College,* 460 F.3d 447, 451 (3d Cir.2006).

## II.

Trianco contends that the District Court made four errors in reaching its decision: (1) finding that New York law recognizes enforceable "Type II preliminary agreements" to negotiate open contract terms in good faith; (2) holding that the parties' Teaming Agreement constituted a "Type II preliminary agreement"; (3) holding that IBM provided consideration for Trianco's services under the agreement; and (4) dismissing Trianco's unjust enrichment claim without permitting additional discovery.[3]

The District Court's analysis relied upon opinions from the Second Circuit Court of Appeals analyzing preliminary agreements under New York law. *See, e.g., Vacold LLC v. Cerami,* 545 F.3d 114 (2d Cir.2008); *Brown v. Cara,* 420 F.3d 148 (2d Cir.2005). This jurisprudence finds its genesis in *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y. 1987), which outlined two forms of preliminary agreements under New York law. The District Court found that the second type—which does not bind parties to an ultimate objective, but does require them to make a good faith effort to negotiate towards such an objective—existed in this case.

Trianco's first contention on appeal is that this line of cases does not accurately reflect New York law and that in fact New York courts have not recognized Type II agreements. A similar argument—that Type II agreements are merely a creation

of the federal courts—was rejected by the Second Circuit in *Brown,* 420 F.3d at 153 n. 1. In *Brown,* the court noted that New York courts have cited with approval to federal court decisions that invoke the concept of Type II agreements. Our own independent review of New York cases compels us to agree with the Second Circuit's conclusion, that Type II agreements are recognized under New York law, and accordingly affirm the District Court. Nor are we persuaded by Trianco's contention that *2004 McDonald Ave. Realty, LLC v. 2004 McDonald Ave. Corp.,* 50 A.D.3d 1021, 858 N.Y.S.2d 203 (N.Y.App. Div.2008), reveals a requirement under New York law that, to be enforceable, contracts to negotiate in good faith must contain some clearer set of guidelines for measuring a party's efforts than those present in this case.[4]

The District Court's opinion carefully applied *Tribune's* five factor test for determining whether a Type II preliminary agreement exists. It examined: (1) whether the agreement expressed an intent to be bound; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) whether the customary form for such transactions indicates the necessity of putting the agreement in final form. *See Tribune,* 670 F.Supp. at 499–503; *see also Brown,* 420 F.3d at 157. We substantially agree with the District Court's conclusions;

---

**3.** In its counter-statement of issues presented for review, IBM adds the issue of whether the District Court erred in holding that the Teaming Agreement covered the same subject matter as Trianco's unjust enrichment claim, thereby precluding that claim. We consider this in our discussion of Trianco's third issue.

**4.** In fact, the concerns expressed in *2004 McDonald Realty* are noted in *Tribune's* description of a Type II agreement: "The second

type-the binding preliminary commitment-does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in *an attempt to reach the alternate objective within the agreed framework." Tribune,* 670 F.Supp. at 498 (emphasis added). This framework of agreed terms provides sufficient guidelines for measuring a party's efforts to negotiate in good faith.

the parties had a binding preliminary agreement to work together in preparing the contract bid and, should IBM receive the bid, to negotiate in good faith. The language of the Teaming Agreement reveals strong evidence of an intent to be bound by the agreement's terms and to negotiate in good faith. This is confirmed by the context of the negotiations. Although the parties left terms open, this does not preclude a finding of a Type II agreement. *See Brown,* 420 F.3d at 158. Although Trianco, which substantially performed its duties under the Teaming Agreement, now seeks to have the agreement declared not binding, this partial performance evidences an intent to be bound. Finally, the parties clearly intended, as is customary in these situations, to negotiate towards a potential subcontract should IBM receive the bid. Accordingly, we find no fault with the District Court's determination that the parties entered into a Type II preliminary agreement.

We find no merit to Trianco's contention that it received no consideration from IBM for the valuable proprietary information, expertise, and credentials it provided. Although our prior opinion in this matter stated that, absent a guaranteed subcontract, "it appears that Trianco may not have received consideration," *Trianco,* 271 Fed.Appx. at 203, this merely provided a basis for our decision to remand, not a statement of our opinion on this issue. As the District Court's opinion revealed, Trianco received valid consideration: a promise to negotiate in good faith and to give Trianco a right of first refusal should IBM receive the government contract. Moreover, as the District Court noted, the agreement to negotiate in good faith entitled Trianco to bring an action for breach of this duty if IBM failed to perform. Trianco chose not to.

We therefore affirm the District Court's determination that an enforceable Type II preliminary agreement to negotiate in good faith existed between Trianco and IBM. The existence of such an agreement precludes a quasi-contract claim, including a claim for unjust enrichment, that arises out of the same subject matter as that governed by the agreement. *Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 192 (1987). As the District Court correctly concluded, Trianco's unjust enrichment claim is predicated on actions it performed as consideration for the Teaming Agreement. *Compare* A73 [Teaming Agreement at § 1.2] & A77 [Scope of Work at § 5.0] with A65–66 [Second Am. Compl.]. Accordingly, Trianco's unjust enrichment claim is precluded.

Having found that the District Court correctly interpreted the Teaming Agreement to determine that Trianco and IBM formed a Type II preliminary agreement, we find no merit in Trianco's contention that the court erred in dismissing the unjust enrichment claim without further factual discovery. No additional discovery was necessary for the District Court to make its determination.

For the foregoing reasons, we will affirm the District Court in all respects.