NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2799
_____

DEBRA V. GARDNER-LOZADA,
Appellant

v.

SEPTA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-02755)
District Judge:  Hon. Gene E.K. Pratter
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 29, 2016

Before:   AMBRO, JORDAN, and SCIRICA, *Circuit Judges*.

(Filed: March 8, 2016)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Debra Gardner-Lozada appeals an order of the United States District Court for the

Eastern District of Pennsylvania granting judgment as a matter of law against her on sex

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

discrimination claims she took to trial against the Southeastern Pennsylvania

Transportation Authority ("SEPTA"). We will affirm.

## I. Background[1]

Gardner-Lozada has been an employee of SEPTA since 1998, when she was hired

as a financial analyst following seven years working for SEPTA as a contractor. The

following year, in 1999, she was promoted to the role of management analyst, and, in

2007, her title changed to assistant director.

On February 14, 2012, SEPTA began the process of hiring a new Director of

Railroad Service Operations through a "Requisition for Personnel." (J.A. 928). An

internal SEPTA job posting was open for applications from March 8 to March 15.

According to the posting, the Director's role was to "[d]irect[] the overall day-to-day

operation of the Rail Transportation, Regional Railroad Division," and the Director was

"[r]esponsible for transportation and station operations, coordination with station and

vehicle maintenance departments, and customer service." (J.A. 930.)

Gardner-Lozada applied for the position and was one of fifteen applicants. She

was placed in "Group B," along with other candidates who met the minimum

qualifications for the position but who were not qualified under the rules of the Northeast

Operating Rules Advisory Committee ("NORAC"), (J.A. 458), which are "a set of

operating rules for railroads in North America intended to enhance railroad safety,"

___

[1] Because we are reviewing a grant of judgment as a matter of law after a contrary jury verdict, we "view[] the evidence in the light most favorable to the verdict." *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). We therefore draw inferences in favor of Gardner-Lozada.

(Answering Br. at 8). Candidates in Group B would only be offered an interview if no candidate in Group A – those who were NORAC qualified – received the position. Seven applicants in Group A were interviewed, and one of them, Richard Mahon, was offered the job.

Consequently, Gardner-Lozada filed suit against SEPTA, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*[2] After a trial, the jury found for SEPTA on the retaliation claim, but found for Gardner-Lozada on her sex discrimination claim, awarding her a single dollar in damages. SEPTA then renewed its earlier motion for judgment as a matter of law, and, on July 24, 2015, the District Court entered an order granting that motion. Gardner-Lozada timely appealed.

## II.    Discussion[3]

"We exercise plenary review over the district court's order granting a Rule 50(b) motion for judgment as a matter of law." *Delli Santi v. CNA Ins. Companies*, 88 F.3d 192, 200 (3d Cir. 1996). Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

---

[2] "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).
    The District Court granted partial summary judgment for SEPTA with regard to Gardner-Lozada's discrimination claims for two other positions, and Gardner-Lozada proceeded to trial only on her claims of discrimination and retaliation with regard to the position of Director of Railroad Service Operations.

[3] The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

3

issue." Fed. R. Civ. P. 50(a)(1). In making that determination, we evaluate whether, "viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party. ... 'The question is not whether there is literally *no evidence* supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)).

Title VII discrimination claims are analyzed according to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under that framework, once the plaintiff-employee establishes a *prima facie* case of discrimination, "then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer is able to do so, the burden shifts back to the employee, who ... must show that the employer's articulated reason was a pretext for intentional discrimination." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008). "In order to show pretext, a plaintiff must submit evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *Id.* at 370.

In this case, because there was "no direct evidence of gender discrimination," nor "circumstantial evidence" of a mixed motive, the District Court – without objection – declined to instruct the jury on a mixed-motive theory of gender discrimination. (J.A. 23

4

n.5 (citing J.A. 842).)[4] Without the mixed-motive theory in consideration, the only theory of liability left required Gardner-Lozada to prove that "consideration of the impermissible factor was a determinative factor in the adverse employment action." *Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 215 (3d Cir. 2000) (internal quotation marks omitted).

In the District Court's analysis, the dispositive nondiscriminatory reason that SEPTA put forward for why it did not promote Gardner-Lozada to the position of Director of Railroad Service Operations is that the candidate it did hire, Mahon, was substantially more qualified.[5] We agree that there was insufficient evidence for a jury to reasonably conclude that Mahon's superior qualifications were mere pretext for SEPTA's decision to hire him instead of Gardner-Lozada.

The position of Director of Railroad Service Operations is responsible for the "overall day-to-day operation" of SEPTA's regional railroad. (J.A. 930.) This entails "[e]nsur[ing] the provision of safe, high quality service," "[r]espond[ing] to service interruptions and emergencies," "[c]oordinat[ing] [] vehicle maintenance," and "[m]anag[ing] all station activities." (*Id.*) As a senior SEPTA official testified at trial, the job is a "big position," (J.A. 723), "responsible for all activities [and] train

---

[4] *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1098 (3d Cir. 1995) (whether to instruct the jury on mixed-motive or pretext theories is a question of law for the district court).

[5] The District Court also considered other arguments, including whether SEPTA's preference for NORAC-qualified candidates was pretextual. Because the Court's ultimate ruling relied simply on the superior qualifications of Mahon, we limit ourselves to evaluating that determination, which is sufficient to support the Court's order.

operations" on a Director's shift, "reacting to any situation," (J.A. 725). The role is, in short, a very senior operational position at SEPTA.

Mahon was eminently qualified for this position. As Gardner-Lozada herself acknowledged at trial, Mahon had a locomotive engineer's license, he was able to operate and move trains, he had been NORAC-qualified for over two decades, he was qualified on the operational physical characteristics of the railroad, he had over twenty years' experience in railroad operations, he was the only person at SEPTA qualified to conduct Federal Railroad Administration decertification hearings following an accident or derailment, and he was one of the only SEPTA employees able to conduct a recording audit[6] following an accident.

Gardner-Lozada had none of those qualifications, and even though she was prepared to at least say at trial that Mahon was "just as qualified as [she] was," (J.A. 265), the fact is that she was significantly less qualified. Her educational background was in finance and accounting, and her responsibilities at SEPTA were entirely financial and administrative. She managed railroad revenue and third-party ticket vending, along with associated customer service. Her experience was, as she acknowledged at trial, "focused on the administrative side of the railroad operations, ... not the operations side ... ." (J.A. 205.) Her performance evaluations suggest she was a fine employee, but her role was exclusively administrative.

---

[6] As Gardner-Lozada described them at trial, recording audits are the railroad equivalent of a "black box" investigation following an airplane crash. (J.A. 272.)

After reviewing the evidence presented to the jury on the relative qualifications of Mahon and Gardner-Lozada, we agree with the District Court that there was "substantial, undisputed evidence in the record" to establish that "Mahon was *more* qualified." (J.A. 29.) Indeed, he was much more qualified for the position in question. The role of Director of Railroad Service Operations is a thoroughly operations-centric job, for which Mahon's decades of operations experience made him far better suited.[7] It was therefore not reasonable for the jury to conclude that Gardner-Lozada's gender was a determinative factor in SEPTA's decision not to promote her, and judgment as a matter of law for SEPTA was proper.[8]

---

[7] Even were we skeptical of SEPTA's evaluation of the applicants' relative qualifications, we would consider that issue, as the jury should have, under a standard deferential to its determination. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability ... ." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981). To the contrary, "[e]vidence establishing [the] incredibility" of the employer's qualification determination "must show that the standard ... the employer relied on was obviously weak or implausible." *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992) (internal quotation marks omitted).

[8] Gardner-Lozada does not dispute Mahon's more extensive operations experience. Rather, her argument is that she met the minimum qualifications for the job and hence should have been offered an interview, at which she would have performed better than Mahon because of her superior interview skills.

We agree with the District Court's rationale for rejecting that argument. Gardner-Lozada went to trial solely on a "failure-to-promote theory of liability, *not* a failure-to-interview theory of liability," presumably because she would not have been entitled to back-pay under a failure-to-interview theory. (J.A. 28 n.11.) She therefore had to prove that, had she gotten the interview, she would have received the promotion. As the District Court pointed out, "the high regard in which Ms. Gardner-Lozada holds her own interviewing skills is not sufficient evidence from which the jury could reasonably have concluded that she would have outperformed Mr. Mahon at the interview." (J.A. 30.) Indeed, other than Gardner-Lozada's self-serving opinion, the jury had no evidence

7

## III. Conclusion

For the foregoing reasons, we will affirm the order of the District Court.

---

before it to suggest that that she could have out-performed Mahon in the interview, given his superior experience.