NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1090
_____

MARGARET P. TOURTELLOTTE, KARLA KREIGER;
ASHLEY C. HISER; ANA V. REYES; JENNIFER A. KOVER

v.

ELI LILLY AND COMPANY; TIMOTHY ROWLAND

MARGARET P. TOURTELLOTTE; KARLA KREIGER;
ASHLEY C. HISER; ANNA V. REYES,
                                        Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:09-cv-00774)
District Judge:  Honorable Petrese B. Tucker

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 7, 2015

Before:  FUENTES, SHWARTZ and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed:  January 13, 2016)

_____

OPINION*

_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VAN ANTWERPEN, *Circuit Judge*.

Appellants Margaret P. Tourtellotte, Karla Krieger, and Ana Reyes appeal several final decisions of the U.S. District Court for the Eastern District of Pennsylvania: an April 16, 2013 decision granting in part Eli Lilly and Company's ("Lilly") renewed motion for summary judgment as to claims by Ana Reyes, except her retaliation claim; an April 16, 2013 decision granting Lilly's renewed motion for summary judgment as to all claims by Karla Krieger; an April 16, 2013 decision granting Lilly's renewed motion for summary judgment against all claims by Margaret Tourtellotte; an April 17, 2013 decision granting Timothy Rowland's motion for summary judgment against Margaret Tourtellotte and Karla Krieger; a January 29, 2014 order denying Reyes's *motion in limine* to admit evidence of Rowland's conduct toward other employees, as well as the District Court's final judgment entered against Reyes on December 16, 2014 following the jury trial on her retaliation claim. (App. 3a–9a). We will affirm the decisions of the District Court.

## I.     Factual Background and Procedural History

### A.     *Tourtellotte, Krieger, and Reyes's Version of the Facts*

Viewing the record from Appellants' perspective, the facts in this case are as follows. The three Appellants are former pharmaceutical sales representatives at Lilly.[1]

---

[1] Tourtellotte worked at Lilly from March 2004 until her termination in January 2008. (App. 10a, 13a). Krieger worked at Lilly from May 2005 until her termination on November 4, 2008. (*Id.* at 32a, 38a). Reyes worked at Lilly from June 2004 until her termination on February 21, 2008 (*Id.* at 52a, 57a). Reyes was initially a treatment team

Appellants are all members of at least one federal or state protected class under Title VII, the New Jersey Law Against Discrimination ("NJLAD") and the Pennsylvania Human Relations Act ("PHRA"): Appellant Tourtellotte is a Caucasian female, Appellant Krieger is an African American female, and Appellant Reyes is a Hispanic female. (Appellants' Br. 5). In January 2007, Defendant Timothy Rowland became a District Manager at Lilly and Appellants' direct supervisor. (App. 11a, 33a, 53a). Tourtellotte and Krieger's first interaction with Rowland was at a sales team meeting that month, from which Reyes was absent. (Appellants' Br. 5). At the meeting, Rowland made a number of comments Appellants cite as among the allegedly unlawful conduct giving rise to their present claims. Rowland shared personal information about himself, such as that he had not met an African American individual until he went to college and that he majored in home economics because he wanted to be around women. (App. 11a, 33a). Rowland commented on the appearance of the female employees and remarked about "all the female Barbie dolls that are now in the pharmaceutical industry." (*Id.* at 11a). During a group activity, Rowland told Tourtellotte and another female employee, "let's let the pretty girls go first". (*Id.* at 11a) (internal quotation marks omitted).

During a four-day regional meeting in Atlanta, Georgia for Appellants' entire division, Rowland engaged in conduct all Appellants cite as contributing to their present claims. Tourtellotte states that Rowland again commented that the pharmaceutical industry is all about the "Barbie dolls." (*Id.* at 970a, 1245a–1247a, 1348a). In front of

specialist and became a senior sales representative when Lilly eliminated the specialist position. (*Id.* at 52a).

other colleagues Rowland criticized Tourtellotte, but not her male co-workers. (*Id.* at 1838a, 1865a). Rowland mocked Reyes's accent in front of their entire district, as well as the accent of another Lilly employee of Spanish descent.[2] (*Id.* at 1240a–1243a). During a role-playing exercise, while assuming the part of a doctor speaking to a sales representative, Rowland said "black people do not speak fast." (*Id.* at 945a–946a).

### B. *Tourtellotte*

Rowland became Tourtellotte's supervisor upon her return from maternity leave in January 2007. (*Id.* at 10a–11a). From the beginning, when the two interacted Rowland commented on Tourtellotte's appearance, saying that doctors must love seeing her and referring to her as the "pretty redheaded Lilly rep." (*Id.* at 1837a, 1838a). At their initial one-on-one meeting, Rowland first suggested that Tourtellotte discuss her career and commitment to her current position with her husband. (*Id.* at 1843a–1844a).

Two points of contention between Rowland and Tourtellotte were her breastfeeding and childcare needs. At the regional meeting in Atlanta, Rowland did not adhere to Lilly's nursing policy. (*Id.* at 11a). At the same time, Rowland made a comment about his wife's body while discussing her nursing their son. (*Id.* at 1837a). At a team meeting the following month, Rowland gestured to Tourtellotte and another breastfeeding employee, stating that he and his wife "decided that one of [them] always needs to be suckling on the breast of corporate America." (*Id.* at 555a). Tourtellotte reported Rowland to Lilly Human Resources ("HR") Representatives Julia Dunlap and

_____

[2] Rowland also mocked Reyes's accent at a meeting the next month. (App. 2018a).

Matt Morgan in March 2007 after Rowland criticized Tourtellotte for availing herself of Lilly's nursing policy and requesting days off to care for her sick child.[3] (*Id.* at 12a, 691a). Tourtellotte again reported Rowland's conduct to Morgan in May 2007 after Rowland displayed hostility towards her at a field visit that month. (*Id.* at 12a, 1839a, 1847a–1849a).

From mid-May until mid-June 2007, Tourtellotte was granted medical leave for extreme stress and anxiety.[4] (*Id.* at 13a). While on medical leave, Tourtellotte's position was filled. (*Id.*). Because her position was no longer available, Lilly placed Tourtellotte on paid medical reassignment when she returned in September 2007. (*Id.*). The terms of Tourtellotte's medical reassignment gave her sixteen weeks of paid time, during which her primary responsibility was to find, apply, and secure a new position within the company. (*Id.* at 1890a). Tourtellotte did not apply for a single position during this time. (*Id.* at 13a). Lilly terminated her employment in January 2008 for failure to apply for or obtain a new position. (*Id.*).

## C. *Krieger*

Krieger states that from the beginning Rowland treated her differently than non-minority and male employees. (*Id.* at 951a). At their first encounter, Rowland told

---

[3] Tourtellotte alleges that Rowland tried to deny her time off, which Lilly ultimately approved in compliance with company policy. (*Id.* at 12a–13a).

[4] Tourtellotte submitted a request, accompanied by a letter from her treating physician, Dr. Waldron, to extend her leave until January 1, 2008. (*Id.* at 13a). Lilly granted this request in part, and required Tourtellotte return to work on August 21, 2007. (*Id.*). In its approval of this extension, Lilly indicated that any further requests would likely be denied. Tourtellotte did request another extension of her leave, which Lilly denied. (*Id.*).

Krieger that he loved women with blonde hair and blue eyes. (*Id.* at 33a). At their next

interaction, Rowland threatened to fire Krieger because of her "terrible" performance and

said "speak English to me" repeatedly in response to Krieger's reaction to his statements.

(*Id.* at 931a–933a). Krieger believes Rowland's comment referred to Ebonics.[5] (*Id.* at

932a, 934a). At a meeting the next month, Rowland met with Krieger and her partner,

Peter Puleo, to address the fact that sales in their territory were at the bottom of the

district. At the meeting, Rowland did not to make eye contact with Krieger and cut her

off when she spoke. He also referred to an African American Lilly employee as the

"smartest black man I know" and discussed women's breast sizes with Puleo.[6] (*Id.* at

34a, 940a–943a).

Krieger first reported Rowland to HR in March 2007 following the Atlanta

meeting, but alleges that HR never investigated or followed up on her complaint.[7] (*Id.* at

---

[5] A blend of ebony and phonics, Ebonics refers to "black English," a nonstandard variety of English and African languages. *Dictionary: Ebonics*, Merriam Webster, http://www.merriam-webster.com/dictionary/ebonics (last visited Dec. 7, 2015); *Ebonics*, Encyclopedia Britannica, http://www.britannica.com/topic/Ebonics (last visited Dec. 7, 2015).

[6] In Krieger's race and sex discrimination claims, discussed *infra*, she asserts that Rowland treated Puleo and other males and non-minorities differently than her.

Krieger cites changes to federal law as causing the decline in sales. (*Id.* at 34a).

[7] Krieger also reported Rowland's interactions with another Lilly Sales Representative, Denise Reese. Krieger observed Reese acting inappropriately with Rowland at meetings. (App. 35a–36a).

Krieger alleges that HR did not investigate her complaint based on her views that Rowland's treatment and conduct toward her intensified after she complained. (*Id.* at 35a). Rowland asserts that Krieger only reported him to "undermine the validity" of a reprimand he gave her for arriving late to a session at the Atlanta meeting. (Appellee Rowland's Br. 13 n.5).

35a). At meetings, Rowland kept his distance and ignored Krieger's contributions. (*Id.* at 953a–954a, 2022a). When Krieger attempted to discuss transferring to another position at Lilly, Rowland cut her off and advised that she discuss the issue of job performance with her husband. (*Id.* at 962a–963a, 2023a–2024a). Krieger again relayed concerns about Rowland to HR in June 2007. (*Id.* at 36a).[8] The next month Rowland issued Krieger a written warning based on her pattern of tardiness over the past year. (*Id.* at 36a). Krieger's tardiness was initially documented by her previous supervisor who issued Krieger a verbal warning for the same offense. (*Id.* at 33a, 36a).

In July 2008, Lilly transferred Krieger to a new group supervised by Dan Gold, who Krieger states is Rowland's mentor.[9] (*Id.* at 37a). The next month, Gold issued Krieger a written warning for violating company policies regarding permissible expenses on a business meal, as well as for tardiness and performance issues, including failure to comply with field visit requirements.[10] (*Id.* at 37a, 378a–382a). At some point in the fall

---

[8] HR Rep. Mike Messina told Krieger that some of the statements she reported that Rowland had made, if true, might be a violation of Lilly policy. (*Id.* at 36a). Messina began an investigation into Rowland's conduct after speaking to Krieger. (*Id.*). Ultimately Messina concluded that Krieger's allegations were unsubstantiated and that there was "no evidence that [Rowland] violated Lilly's 'Conduct in the Workplace' policy." (*Id.*) (internal quotation marks omitted).

[9] Gold incorrectly believed that Krieger was still on probation at the time of her transfer, even though she had in fact completed her probation the previous month. (*Id.* at 37a). In September 2007, Krieger was first placed on probation while under Rowland's supervision for violating company policies by tampering with her computer's clock to make late reports appear on time. (*Id.*). Krieger completed the terms of probation in June 2008, and was told that she would not be eligible for another probationary period for three years. (*Id.*).

[10] Krieger admits committing these violations, but asserts that most of her colleagues also failed to complete certain field visit requirement tasks and were not

of 2008, Krieger went on leave due to her husband's health issues and hospitalization. (*Id.* at 38a). Upon her return, Lilly terminated Krieger in November 2008 for poor performance, including failing a test on her new products. (*Id.* at 38a).

D.     *Reyes*

Reyes first met with Rowland upon her return from medical leave in January 2007.[11] (*Id.* at 53a). During the meeting Rowland became extremely agitated and yelled at Reyes for no ascertainable reason. (*Id.*). Following their initial meeting, Rowland told Reyes a story about a poor Hispanic woman whom he once helped find a more appropriate job. (*Id.* at 1188a, 1193a). After Rowland became very upset with Reyes during a January 2007 field visit, Reyes made her first request for mentoring. (*Id.* at 1203a). During the next field visit, when Reyes made a renewed request for mentoring, Rowland told her that mentoring would be futile because just as his son would never be a famous basketball player, she would never be a good sales representative. (*Id.* at 1197a, 1202a–1203a).

When Reyes approached Rowland about a merit pay increase in February 2007, Rowland told her that she would receive a one percent raise, which was commensurate with what she deserved. (*Id.* at 1201a–1202a). Rowland expressed his goal of decreasing team members and advised Reyes to look for other jobs within Lilly, such as one that would utilize her language skills. (*Id.* at 1202a–1203a). Rowland also repeated the story about the poor Hispanic woman. (*Id.* at 1202a). Reyes requested a mentor again during a

---

disciplined. (*Id.* at 38a).

[11] The District Court opinion and briefs are silent as to the reason for this leave.

February 2007 field ride, since her male partner had received one. (*Id.* at 1237a). Rowland again used the analogy of his son and basketball and suggested Reyes search for another position at Lilly. (*Id.* at 1236a–1238a).

In March 2007, Reyes started seeking treatment from her primary care physician for "anxiety and depression related to work and stress." (*Id.* at 2002a). Reyes asserts that Rowland's interactions with her male colleagues were different than those with her. Rowland once told Reyes that she could not attend a meeting with an important doctor because it was a "guys [sic] meeting." (*Id.* at 1265a–1266a). Rowland asked Reyes to complete certain menial tasks that he did not require of her male partner, and which other sales representatives were not required to do. (*Id.* at 1256a). Reyes made a complaint to HR the next month on the basis that Rowland was discriminating against and harassing her because she was a female of Hispanic descent. (*Id.* at 1160a; Appellants' Br. 16).[12]

Reyes requested, and was granted, paid medical leave beginning in May 2007 due to depression and anxiety. (*Id.* at 56a). Reyes submitted four subsequent requests to extend her leave, which were approved, with a revised return date of December 2007. (*Id.* at 56a). While on leave, Reyes requested that Lilly allow her to move into a position in which she would no longer work with Rowland, as recommended by her doctor. (*Id.* at 2007a). Also while on leave, Reyes filed a charge of discrimination jointly with the

---

[12] Reyes states that Rowland's treatment worsened after she initially complained to HR, which she reported to HR when they followed up with her during her medical leave. (*Id.* at 1162a–1164a).

Pennsylvania Human Relations Commission (PHRC) and the Equal Employment

Opportunity Commission (EEOC).[13] (*Id.* at 1998a–2001a).

After Reyes's return to work in December 2007, Rowland and Reyes met one-on-one in early January 2008 to discuss his expectations for their sales district. (*Id.* at 56a). Reyes alleges that at this meeting Rowland told her he would be watching her very closely because they would be seeing each other two to three times a week, as opposed to once a month as in the past. (*Id.* at 1288a–1289a). Right after her meeting with Rowland, Reyes was admitted to the hospital for bronchitis and asthma, and again went on depression-related medical leave approved until mid-February. (*Id.* at 57a, 2017a). While on leave, Reyes's depression worsened and she told HR Representative Steve Washburn she would only come back to work if she had a different supervisor. (*Id.* at 57a). Washburn declined Reyes's request. (*Id.*). Reyes was terminated effective February 18, 2008 for refusing to return to work. (*Id.* at 1220a–1221a, 1336a–1338a).

### E.      *Procedural History*

Tourtellotte initially brought suit against Lilly and Rowland in New Jersey state court. (Appellee Rowland's Br. 2). Lilly and Rowland removed to federal court. (*Id.*). Tourtellotte voluntarily dismissed and refiled in Pennsylvania state court in Philadelphia in December 2008, along with claims by Krieger, Reyes, Ashley Hiser, and Jennifer

---

[13] The charge claimed that Reyes was subjected to a "hostile work environment" based on her "sex, race, national origin and retaliation." (*Id.* at 2000a–2001a). Reyes received a right to sue letter indicating that the EEOC terminated processing her charge and would not be pursuing it further on November 12, 2008. (*Id.* at 62a). Reyes never sought to amend this charge or file another.

Kover.[14] (*Id.*). Lilly and Rowland removed the case to federal court in the Eastern District of Pennsylvania. (App. 76a). Lilly and Rowland initially filed motions for summary judgment to which Appellants responded with requests for additional discovery pursuant to Federal Rule of Civil Procedure ("Rule") 56(f). (App. 80a–84a). The District Court, (Fullam, J.P., J.), denied Lilly and Rowland's motions without prejudice and allowed Appellants to proceed with discovery. (*Id.* at 85a). At the close of discovery, Lilly and Rowland both submitted renewed motions for summary judgment, which the District Court, (Tucker, P., C.J.), granted for all claims against both Defendants, except for Reyes's retaliation claim against Lilly under Title VII, which proceeded to trial. (*Id.* at 6a–9a). A jury trial on Reyes's retaliation claim ended with a verdict entered in favor of Lilly on December 16, 2014. (*Id.* at 3a). This timely consolidated appeal followed. (*Id.* at 1a–2a).

## II. Discussion[15]

### A. Standard of Review

We exercise plenary review over a district court order granting summary judgment. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 (3d Cir. 1998). Accordingly, our review is identical to that performed by the District Court.

---

[14] Kover withdrew all her claims in July 2009. (App. 78a). Hiser is listed as a plaintiff on the notice of appeal that Appellants' counsel filed, but she has since withdrawn her appeal. (Appellants' Br. 4; App. 1a, 99a). Neither the Appellants' brief, nor the record, is clear on when Hiser withdrew from the appeal.

[15] The District Court had jurisdiction to hear Appellants' federal claims pursuant to 28 U.S.C § 1331. It had jurisdiction over Appellants' state law claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction to review final orders of the district court pursuant to 28 U.S.C. § 1291.

*Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246 (3d Cir. 2002). We will affirm the District Court's grant of summary judgment if the moving party has shown that the evidentiary material of the record, if reduced to admissible evidence, would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In reviewing the grant of summary judgment, we: "(i) resolve conflicting evidence in favor of the nonmovant, (ii) do not engage in credibility determinations, and (iii) draw all reasonable interferences in favor of the nonmovant." *Simpson*, 142 F.3d at 643 n.3 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

With regard Reyes's challenge to evidentiary rulings at trial, this Court reviews the admission or exclusion of evidence for abuse of discretion. *Barker v. Deere & Co.,* 60 F.3d 158, 161 (3d Cir. 1995).

   *B.     Analysis*

Rule 56, which governs summary judgment, requires the nonmoving party to set forth properly supported assertions and facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e)(3). If the nonmoving party rests solely on the mere allegations of its pleadings, Rule 56(e) permits the court to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." *Id.* at 56(e)(3). At the summary judgment stage, a court's job is not to act as the jury and weigh the evidence, make credibility determinations, or "determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (internal quotation marks omitted). If a court finds that the nonmoving party has not met its burden of demonstrating a genuine issue of material fact for trial, the court must enter summary judgment against it, even on issues a jury would decide if the claim survived summary judgment.[16] Fed. R. Civ. P. 56.

Appellants make a number of federal and state law claims under Title VII, the NJLAD, and the PHRA, and the following are the claims raised on appeal.[17] Tourtellotte makes the following claims: breach of contract under state law, sex discrimination in violation of the NJLAD, hostile work environment under the NJLAD, disability discrimination on the basis of failure to accommodate in violation of the NJLAD, and retaliation under the NJLAD for filing a complaint with human resources. Krieger makes the following claims: breach of contract under state law, race discrimination under the NJLAD, sex discrimination under Title VII and the NJLAD, sex-based hostile work environment under the NJLAD, race-based hostile work environment under the NJLAD, and retaliation under the NJLAD and Title VII for filing a complaint with human

---

[16] Appellants contend that the District Court "usurped" the role of the jury by determining that there was no causation or pretext since these are issues for the jury. (Appellants' Br. 34–35, 58–59). In support of this argument, Appellants cite cases from this Circuit. (*Id.* at 34 –35) (citing *Reilly v. City of Atl. City*, 532 F.3d 216 (3d Cir. 2008); *McGreevy v. Stroup*, 413 F.3d 359 (3d Cir. 2005); *Fulmer v. Pennsylvania*, No. 2:08cv1630, 2011 WL 915846 (W.D. Pa. Mar. 16, 2011), *aff'd*, 460 F. App'x 91 (3d Cir. 2012)). None of these cases stand for the proposition that a district court cannot enter summary judgment on claims involving issues of causation and pretext, if the district court finds, in accordance with Rule 56, that there is no genuine issue of material fact. Appellants' position goes against the purpose of summary judgment as a filter for claims for which there is no need for a jury because there is no issue of fact to decide.

[17] Other claims set forth in the complaint are not raised on appeal.

resources. Reyes makes the following claims: race discrimination under the PHRA, sex discrimination under Title VII and the PHRA, hostile work environment under the PHRA, and disability discrimination in violation of the PHRA, in addition to challenges to two evidentiary rulings.

### 1. Tourtellotte and Krieger's Breach of Contract Claims[18]

New Jersey law recognizes that an employee manual, such as a handbook, can create an implied contract between the employer and employee. *Wade v. Kessler Inst.*, 798 A.2d 1251, 1258 (N.J. 2002) (citing *Woolley v. Hoffman-La Roche, Inc.*, 491 A.2d 1257, 1258, *modified on other grounds*, 499 A.2d 515 (N.J. 1985) (mem.). However, where the alleged discrimination would be in violation of the NJLAD, New Jersey law does not recognize "a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 308–09 (3d Cir. 2004).

Tourtellotte and Krieger bring breach of contract claims on the basis of anti-discrimination language in Lilly's Red Book, the company's employee handbook.[19] (App. 16a, 50a). These Appellants assert that the Red Book creates a binding contract between employer and employees, on the basis of which employees can assert rights.

---

[18] Reyes does not assert a breach of contract claim. (App. 52a).

[19] Tourtellotte cites Lilly's alleged failure to pay her childcare expenses covered by the Nursing Mothers Program as another breach of contract based on the relevant language in the Red Book. (App. 17a). The District Court found no breach since Lilly did pay for Tourtellotte's childcare once Tourtellotte submitted a corrected expense report, which Tourtellotte does not dispute. (*Id.*).

(Appellants' Br. 59–60). The District Court granted Lilly's renewed motion for summary judgment on these claims with respect to both Appellants. (App. 15a–17a, 50a–51a).

We agree with the District Court that the language these Appellants cite does not create a binding contract that would give rise to a breach of contract claim, even assuming *arguendo* that the NJLAD permitted this claim in addition to the discrimination claim. Instead of providing the specific language that Tourtellotte and Krieger claim creates a binding contract between Lilly and its employees, these Appellants incorporate by reference twenty-eight pages of the Appendix which they assert "describes in full, the facts regarding the Red Book, its specific policies, and binding effect on employees of Lilly."[20] (Appellants' Br. 59). As the District Court correctly noted, "[n]owhere in the language of the Red Book could one reasonably conclude that the provisions [Tourtellotte] points to were intended to create a legally binding obligation beyond the anti-discrimination laws already in place." (App. 16a). The same reasoning accompanied the District Court's finding that no contract existed in response to Krieger's claim. (*Id.* at 50a). The passages Tourtellotte and Krieger cite contain the same type of "generalized anti-discrimination language" which this Court has held inadequate to create a contract.

---

[20] Lilly asserts that because Tourtellotte and Krieger did not cite specific provisions of the Red Book in support of their contract claims they have waived this argument. (Appellee Lilly's Br. 50). Lilly repeatedly advances waiver arguments throughout its brief. While we agree that Appellants' brief is often lacking in citations to the record and authority, their arguments are not so inadequate that this Court will deem these waived. *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997). Appellants' arguments do not "consist[] of no more than a conclusory assertion . . . (without even a citation to the record) . . . ." so accordingly we reach the merits. *Id.*; (Appellants' Br. 59) (citing App. 1960a–1988a).

*Monaco*, 359 F.3d at 309. Because the language to which Tourtellotte and Krieger point for support is insufficient to create a cognizable contract, we will affirm the grant of summary judgment against Tourtellotte and Krieger on their contract claims.

       2.       *Race and Sex Discrimination Claims Under Title VII and the NJLAD*

All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on sex, race, and disability, which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 & n.7 (3d Cir. 2006) (applying the same framework to a Title VII gender discrimination claim); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 & n.3 (3d Cir. 2004) (applying the *McDonnell Douglas* framework to ADA claims); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (adopting the *McDonnell Douglas* framework for NJLAD employment discrimination cases). The *McDonnell Douglas* framework requires that the plaintiff first establish a *prima facie* case of discrimination or retaliation. If the plaintiff successfully meets the requirements of a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802–04; *see Atkinson*, 460 F.3d at 454. In the context of a challenge to a grant of

summary judgment, at the pretext stage of *McDonnell Douglas* the appellant "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 764) (internal quotation marks omitted). To accomplish this, the appellant must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (alteration in original) (quoting *Fuentes*, 32 F.3d at 765) (internal quotation marks omitted).

This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas. See Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006). The elements of a *prima facie* case are the same for discrimination claims on the basis of sex and race. *See Peper v. Princeton Univ. Bd. of Trustees*, 389 A.2d 465, 479 (N.J. 1978). To establish a *prima facie* case of race or sex discrimination under either the federal or state statute, a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410–11

(3d Cir. 1999); *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). To constitute an adverse employment action, the action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)) (internal quotation marks omitted). To satisfy the elements of a *prima facie* case, an adverse employment action must be material. *Id.*

### a. Tourtellotte's Sex Discrimination Claim Under the NJLAD

Tourtellotte claims Lilly discriminated against her on the basis of sex in violation of the NJLAD by ultimately terminating her employment. (App. 24a). Lilly counters that Tourtellotte did not experience an adverse employment action as she has only presented evidence of "trivial" incidents that do not give rise to a claim of sex discrimination under the NJLAD. (*Id.* at 23a–24a). Specifically, Lilly cites Tourtellotte's proffered incidents, which include Rowland's comments about breastfeeding, her appearance, her need to consult with her husband regarding her schedule and career, and the comparably better evaluations of her male partner, as merely actions that made Tourtellotte unhappy, but did not alter the terms or conditions of her employment. (*Id.* at 24a–25a). The District Court found that Tourtellotte "fail[ed] to make out a prima facie case of discrimination because she fail[ed] to satisfy the 'inference of discrimination' element." (*Id.*).

None of the evidence Tourtellotte presents demonstrates the discriminatory intent necessary for an adverse employment action to satisfy the inference of discrimination element of a *prima facie* case. Accepting Tourtellotte's version of the facts as correct, and

resolving all disputes in her favor as the nonmovant, we agree with the District Court's determination that Tourtellotte's termination does not satisfy this element. Consequently, Tourtellotte has failed to establish a *prima facie* case of sex discrimination under the NJLAD. Demonstrating an adverse employment action, here Tourtellotte's termination, is not sufficient to establish a *prima facie* case of sex discrimination. A *prima facie* case also requires that the adverse employment action be done with discriminatory intent, which is where Tourtellotte's claim fails. *See Cardenas*, 269 F.3d at 263. Tourtellotte has not demonstrated that Lilly intentionally put her on medical reassignment for the purpose of terminating her employment. She has also not provided any evidence that once she was on medical reassignment, Lilly's actions gave rise to an inference of discrimination on the basis of sex. Accordingly, we will affirm the District Court's grant of summary judgment against Tourtellotte on this claim.

### b. *Krieger's Claims Under Title VII and the NJLAD*

Krieger asserts discrimination claims under both Title VII and the NJLAD on the basis of sex and race. Relying on a disparate treatment theory, Krieger points to the more favorable treatment of her white male partner specifically, as well as the generally more favorable treatment of all white males compared to females and racial minorities, as evidence of circumstances that give rise to an inference of discrimination in light of her ultimate termination. (*Id.* at 45a–46a). The District Court found that Krieger failed to

establish a *prima facie* case of discrimination because she did not prove that the adverse employment actions gave rise to an inference of discrimination.[21] (*Id.*).

Krieger cites largely the same evidence in support of the race and sex discrimination claims she advances. Further, as discussed *supra*, the standards for both race and sex discrimination are nearly identical for claims brought under Title VII and NJLAD. Given the overlap in the facts and the application for both sex and race discrimination under Title VII and the NJLAD, we present a single analysis for all of Krieger's race and sex discrimination claims. The *McDonnell Douglas* framework outlined *supra* applies here because Krieger relies on circumstantial evidence to support her claims. *Anderson*, 297 F.3d at 249; *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 906–07 (N.J. 1990) (stating that New Jersey "adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII . . . [as] . . . presented in [*McDonnell Douglas*]" and citing examples of New Jersey Supreme Court cases applying this framework to LAD cases).

The District Court properly granted summary judgment for both the race and sex discrimination claims because Krieger has not presented specific facts or identified evidence, beyond her own bare assertions, that would support her disparate treatment theory of discrimination. (App. 46a). Even viewing Krieger's allegations in the most

---

[21] Appellants state that the District Court granted Lilly's motion for summary judgment on Krieger's race and sex discrimination claims due to Krieger's inability to show pretext. (Appellants' Br. 33). The District Court ruled that Krieger failed to establish a *prima facie* case for race and/or sex discrimination for the reasons described *infra*. (App. 45a). As an alternate ground, the District Court ruled that even if Krieger established a *prima facie* case, Lilly offered a legitimate, nondiscriminatory reason for Krieger's termination and Krieger failed to established pretext. (*Id.* at 46a-48a).

favorable light, the evidence she presents does not give rise to an inference of discrimination. Krieger is unable to point to evidence of Rowland's alleged interactions with others to support the disparate treatment theory and does not dispute the conduct for which she was disciplined or contend that the person who terminated her discriminated against her. (App. 46a). Therefore, we will affirm the District Court's grant of summary judgment against Krieger for this claim.

### c. Reyes's Race and Sex Discrimination Claims Under Title VII and the PHRA[22]

Reyes brings discrimination claims on the basis of both race and sex under Title VII, and the PHRA.[23] Like Tourtellotte and Krieger, Reyes relies on circumstantial evidence to attempt to establish her *prima facie* case. As discussed *supra*, the *McDonnell Douglas* burden-shifting framework applies to such claims under all three statutes. The District Court found that as with Tourtellotte and Krieger, Reyes did not meet her burden

---

[22] In their renewed motions for summary judgment, both Appellees argued that Reyes failed to exhaust her administrative remedies with respect to these claims. (App. 60a). The District Court found that Reyes's claims which post-dated the filed charge were properly exhausted since "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." (*Id.*) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1025–26 (3d Cir. 1997)) (internal quotation marks omitted). We agree with the District Court's analysis and accordingly reach the merits of these claims.

[23] This Court has stated that "[c]laims under the PHRA are interpreted coextensively with Title VII claims." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Atkinson*, 460 F.3d at 454 n.6) (internal quotation marks omitted). Accordingly, we present a single analysis for claims brought under both statutes.

in establishing a *prima facie* case of discrimination.[24] (App. 69a). As with the other Appellants, the Court found that Reyes failed to establish a *prima facie* case because she did not allege conduct that gave rise to an inference that her termination was discriminatory. (*Id.*). It is undisputed that Reyes's termination for failure to return to work following her approved medical leave qualifies as an adverse employment action, in satisfaction of that element of her *prima facie* case. (*Id.* at 68a). However, the evidence Reyes presents in support of this claim does not relate to her termination. Rather, the incidents to which Reyes points—which involve more favorable treatment of male coworkers and disparaging remarks—seem to speak more to Reyes's hostile work environment claim. These incidents are not sufficiently linked to Reyes's termination and consequently fail to support the requisite discriminatory intent behind her termination.[25]

---

[24] Again Appellant mischaracterizes the proceedings below, stating that "for Reyes, the court found insufficient evidence that Defendant's, legitimate, non-discriminatory reason for termination was pretextual." (Appellants' Br. 33). The District Court did not even address the legitimate, nondiscriminatory reason Lilly offered, let alone reach the pretext stage.

[25] Reyes, as well as her co-Appellants, asserts that Lilly's failure to appropriately investigate her complaint, provides the necessary causal link. For all three Appellants, Lilly's allegedly insufficient investigation does not establish the relation between the alleged discrimination and the adverse employment actions. While this Court has recognized that if an employer fails to investigate and remediate unlawful conduct they are liable for any resulting discrimination, this requires a determination of actual discrimination, which is not present in this consolidated case. *See, e.g.*, *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 107 (3d Cir. 1994). This Court has also stated that a deficient investigation can constitute an adverse employment action under Title VII if it "effect[s] a material change in the terms or conditions of [a person's] employment." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Neither situation is present here as Lilly did actually investigate Appellants' claims. (App. 36a). Appellants have not demonstrated how these investigations were so deficient as to

Reyes also bases the discrimination claims on her February 2007 merit pay increase. Based on this Court's definition of adverse employment action, we agree with the District Court that receipt of a less than expected merit increase does not constitute a material change in the terms or conditions of employment, and is subsequently not an adverse employment action.[26] (App. 70a). For these reasons, we will affirm the District Court's grant of summary judgment against Reyes on her race and sex discrimination claims.

### 3. Hostile Work Environment Claims Under Title VII and the NJLAD

Title VII prohibits sexual harassment that is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)). This type of sexual harassment claim is referred to as a hostile work environment claim. *Id.* at 18–19. A plaintiff must establish four elements to succeed on a hostile work environment claim: "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; [and] (4)

---

constitute an adverse employment action and the underlying claims are not discrimination in violation of the applicable laws.

[26] Recognizing the claim specific nature of a *prima facie* case, the District Court noted that in the retaliation context, as opposed to with a discrimination claim, receipt of a less than expected merit increase could rise to the level of an adverse employment action. (App. 69a–70a) (citing *Keeley v. Small*, 391 F. Supp. 2d 30, 48 (D.D.C. 2005)).

An additional defect in Reyes's attempt to link Rowland's allegedly discriminatory conduct to her February 2007 merit pay increase is his lack of involvement in determining the amount she received. Reyes does not dispute Lilly's recitation of the facts stating that the pay increase was based on a performance review conducted by Reyes's former supervisor and ultimately decided by the regional manager. (App. 70a).

the discrimination would detrimentally affect a reasonable person of the same sex in that position." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)). To hold an employer liable, the plaintiff must also establish a fifth element, *respondeat superior*. *Id.*

In the years since the United States Supreme Court set forth the "severe or pervasive" standard in *Meritor Savings Bank, FSB v. Vinson*, the Court has further articulated that this is an objective standard, based on "an environment that a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21. To determine if the alleged harassment is so hostile or abusive to rise to the level of an unlawful hostile environment, the Supreme Court directs courts to "look[] at all the circumstances," including the frequency of the alleged conduct. *Id.* at 23; *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting *Vance v. S. Bell Tel. and Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir. 1989)) (stating that "a plaintiff must establish by the totality of the circumstances, the existence of a hostile or abusive working *environment* which is severe enough to affect the psychological stability of a minority employee"). Supreme Court hostile work environment jurisprudence states that the "sufficiently demanding" "standards for judging hostility" "ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81(1998)).

All three Appellants assert hostile work environment claims, Tourtellotte on the basis of sex under the NJLAD, Krieger on the bases of sex and race under the NJLAD, and Reyes on the bases of sex and race under the PHRA. (App. 29a, 41a, 64a). Because

all three Appellants rely on nearly identical facts, including references to the allegedly discriminatory conduct experienced by their co-Appellants and the standards for assessing the claims are nearly identical for the state and federal statutes, as well as for race and sex, we present our assessment of their three claims in a single analysis. The District Court found that none of the Appellants established a *prima facie* case of a hostile work environment, and accordingly granted summary judgment against them. Appellants contend that the District Court erred in finding the alleged conduct neither "severe" nor "pervasive" (Appellants' Br. 44–47). First, they contend that the District Court applied a heightened standard requiring "severe and pervasive" conduct for Tourtellotte and Krieger claims even though the NJLAD uses a more relaxed standard than Title VII. (*Id.* at 42–46). Specifically, Appellants aver that the District Court relied too heavily on the frequency of the alleged conduct, which they agree is a factor, but not dispositive. (*Id.* at 44a–47a). Second, Appellants faulted the District Court for not following the totality of the circumstances approach mandated by *Harris* and followed by this Circuit in *Andrews* (*Id.* at 43).

This Court, applying New Jersey state law when sitting in diversity, and applying federal law with respect to Title VII, follows the *Meritor* "severe or pervasive" standard.[27] *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 (3d Cir. 1994) (citing

---

[27] Some earlier cases from this Court do refer to the standard as "severe and pervasive." *See e.g., Cardenas,* 269 F.3d at 261, 262. Acknowledging this discrepancy, in more recent years this Court has clarified that the controlling standard is "severe or pervasive." *Jensen v. Potter*, 435 F.3d 444, 449 & n.3 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 53. We have further recognized that "the difference [between the standards] is meaningful, and the Supreme

*Meritor Sav. Bank, FSB*, 477 U.S. at 67; *Andrews*, 895 F.2d at 1482; *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993)). With respect to the facts all three Appellants present in support of their hostile work environment claims, the District Court assessed all comments and actions in light of both their frequency and nature. (App. 30a–31a, 41a–43a, 64a–66a). Applying the same "severe or pervasive" test, as the District Court, we reach the same conclusion, and will affirm the grant of summary judgment against all three Appellants as to their hostile work environment claims. The District Court correctly found that these incidents "did not unreasonably interfere with [Tourtellotte]'s ability to perform her job." (App. 29a–31a, stating that Tourtellotte's hostile work environment claim fails for the same reason as the claims of her co-plaintiffs). All three District Court opinions demonstrate the correct application of the "severe or pervasive standard." (*Id.* at 30a, 42a, 65a).

The District Court correctly acknowledged that under the totality of the circumstances it "may," but is not required to consider evidence of discriminatory conduct directed at other individuals, "especially where such evidence may assist the factfinder in determining whether facially neutral conduct was actually based on plaintiff's protected class." (*Id.* at 41a. n.3) (citing *Caver v. City of Trenton*, 420 F.3d

---

Court's word controls." *Id.* at 449 n.3. Both sporadic and isolated conduct, which is severe enough can give rise to a hostile work environment, as can less offensive conduct which is sufficiently prevalent. *Id.* Therefore, this Court's standard is identical to that adopted by the New Jersey Supreme Court in *Lehmann v. Toys R' Us, Inc.*, 626 A.2d 445, 453 (N.J. 1993), and the District Court did not err by characterizing and applying these standards as the same. (App. 40a n.2). The New Jersey standard is not a relaxed version of the Title VII standard as Appellants incorrectly assert. (Appellants' Br. 42).

243, 263 (3d Cir. 2005)); *Andrews*, 895 F.2d at 1485 ("[W]e hold that the pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment."). The District Court clarified that in reaching this assessment it was not ignoring the evidence of discriminatory conduct towards employees other than each individual plaintiff. (*Id.* at 43a). Appellants misconstrue *Andrews*. Appellants conflate its holding regarding the totality of the circumstances approach to mean that citing the grievances of others and asserting that these contributed to a hostile work environment is sufficient to establish a *prima facie* case.[28] This argument misinterprets this Court's precedent stating the elements of a *prima facie* case of a hostile work environment claim. The totality of the circumstances approach set forth in *Andrews* and its progeny allows courts to consider the larger context in which the alleged incidents occur in hostile work environment claims. *See Andrews,* 895 F.2d at 1474. Assessing the larger context does not allow each Appellant to rely on the evidence without demonstrating how conduct directed towards others impacted them in satisfaction of their own *prima facie* case. (App. 43a–44a). Consequently, we will affirm the District Court's grant of summary judgment against all Appellants with respect to their hostile work environment claims.

---

[28] While *Andrews* and NJLAD case law permit the introduction of discriminatory conduct towards individuals other than the plaintiffs, this is limited to "other acts" of which the plaintiff has firsthand knowledge. *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1048–49 (N.J. 2008). The plaintiff must also establish the causal link between these other acts and their own *prima facie* case. Here, we do not address the experiences of other female Lilly employees cited in Appellants' brief because they have not demonstrated how these grievances contributed to their own, and have not established sufficient knowledge of such acts. (Appellants' Br. 15–19, 22–25).

### 4. Tourtellotte and Reyes's Disability Discrimination Claims[29]

Tourtellotte and Reyes both assert disability discrimination claims. After presenting the elements of a *prima facie* case of disability discrimination claim and the categories of disability claims under the NJLAD, we first address Tourtellotte's failure to accommodate claim. Next, we analyze the issue of failure to exhaust administrative remedies with respect to Reyes's disability discrimination claim under the NJLAD.

Disability discrimination claims under the NJLAD proceed within the *McDonnell Douglas* framework discussed *supra*. *Viscik,* 800 A.2d at 833–34 (applying *McDonnell Douglas* to a disparate treatment NJLAD disability claim); *Victor v. State*, 4 A.3d 126, 140–41 (N.J. 2010) (applying *McDonnell Douglas* to a failure to accommodate NJLAD disability claim). The specific elements a *prima facie* case of disability discrimination vary to some extent, like all employment discrimination claims, depending on the specific cause of action. *Victor*, 4 A.3d at 141–42. To establish a *prima facie* case of disability discrimination for discriminatory discharge, a plaintiff must demonstrate that: (1) she is the member of a protected class, specifically that she has or is perceived to

---

[29] In her initial complaint, Krieger claimed that Lilly discriminated against her on the basis of an alleged disability, specifically as a nursing mother and caregiver. In response to Lilly's request for admission, Krieger admitted that she was no longer asserting this claim. (App. 49a n.6). This Court has long held that issues not raised before the district court are waived and cannot be raised for the first time on appeal. *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990). We do not address Krieger's disability discrimination claim since it was waived, and consequently appellate review is not available.

For the reasons expounded *infra*, we will affirm the District Court's finding that Reyes did not exhaust her administrative remedies before filing in federal court. Therefore, we do not reach the merits of her claim of disability discrimination under the NJLAD.

have a disability as defined by the NJLAD;[30] (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) she experienced an adverse employment action; and (4) the employer sought someone else to perform the same work, or did fill the position with a similarly-qualified person. *Id.* Satisfaction of all four elements of a *prima facie* case creates a presumption of discrimination. *Andersen v. Exxon Co., U.S.A.*, 446 A.2d 486, 492–93 (N.J. 1982). At this point the *McDonnell Douglas* framework proceeds in the same manner as with the other claims described *supra*. *Viscik*, 800 A.2d at 833; *Andersen*, 446 A.2d at 493.

### a. Tourtellotte

Tourtellotte premises her disability claim on a non-physical handicap, based on the mental health diagnoses she received due to Rowland's conduct. (App. 18a.). The District Court found that Tourtellotte presented sufficient evidence to demonstrate that she suffered from a cognizable non-physical handicap upon which she could premise her discrimination claim. (*Id.* at 19a). The District Court nevertheless granted summary

---

[30] The Supreme Court of New Jersey has noted that while disability discrimination claims under the NJLAD proceed according to *McDonnell Douglas*, "[i]dentifying the elements of the prima facie case that are unique to the particular discrimination claim is critical to [a claim's] evaluation." *Victor*, 4 A.3d at 142. The Court has further observed that the first element of a *prima facie* case of disability discrimination differs from other discrimination claims in that it "requires [the] plaintiff to demonstrate that he or she qualifies as an individual with a disability, or who is perceived as having a disability, as that has been defined by statute." *Id.* (footnote omitted). The NJLAD defines disability in a broader sense than does federal law. *Id.* at 142 n.11.

judgment against Tourellotte under her failure to accommodate claim on the basis of failure to engage in the interactive process. (*Id.* at 22a).

### i. Failure to Accommodate

Once a plaintiff has established a *prima facie* case of disability discrimination, in a failure to accommodate claim the plaintiff must establish four elements "to show that an employer failed to participate in the interactive process."[31] *Victor*, 4 A.3d at 145 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319 (3d Cir. 1999)). The elements are that: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* at 145 (quoting *Taylor,* 184 F.3d at 319–20). Interpreting the requirements of the NJLAD articulated by New Jersey courts, this Court places the burden on the employer, who has notice of an employee's disability, to make a reasonable accommodation for the employee. *Armstrong*, 438 F.3d at 247. This burden does not require that "any particular concession must be made by the employer . . . [but instead what it] requires is that employers make a good-faith effort to seek accommodations." *Victor*, 4 A.3d at 150

---

[31] New Jersey courts have recently suggested that it may be possible to successfully assert failure to accommodate as a separate claim without a *prima facie* showing of disability discrimination. *Victor,* 4 A.3d at 145–49. This would allow plaintiffs who have not experienced an adverse employment action such as termination, to nevertheless assert a failure to accommodate claim. At the time of this Opinion, this Circuit has not yet decided this issue. Since Tourellotte experienced an adverse employment action, we need not determine if failure to accommodate can proceed as a separate action.

(alterations in original) (quoting *Taylor*, 184 F.3d at 317). An employer making a good faith effort in the interactive process bears the responsibility of "mak[ing] [a] reasonable effort to determine the appropriate accommodation." *Armstrong*, 438 F.3d at 247 (quoting *Tynan v. Vicinage 13 of Super. Ct.*, 798 A.2d 648, 657 (N.J. Super Ct. App. Div. 2002)).

The District Court correctly found that Tourtellotte presented sufficient evidence to show that she is disabled as matter of law. (App. 19a). Tourtellotte states that as a result of Rowland's conduct she suffered from extreme stress and anxiety, for which she sought treatment by an internal medicine practitioner. (*Id.* at 13a, 1860a). Looking to the requirements of a failure to accommodate claim, Tourtellotte easily meets the first two elements. Lilly does not dispute that it was aware of Tourtellotte's disability because she requested medical leave based on her mental health issues. (*Id.* at 21a). With respect to the second element, Lilly agrees that Tourtellotte's request to not come in contact with Rowland constituted a request for accommodation. (Appellee Lilly's Br. 44).

Tourtellotte's disability discrimination on the basis of failure to accommodate claim fails at the third element, which focuses on whether the employer did acted in good faith. We agree with the District Court's finding that Lilly met its burden and engaged in the interactive process in good faith. (App. 21a). As the District Court found, it was Tourtellotte's outright refusal to engage in the interactive process at all, that made summary judgment against her on this claim appropriate. (App. 22a). Tourtellotte's reliance on *Tynan*, in which the Superior Court of New Jersey determined a material issue of fact existed in whether the employer acted in bad faith by not initiating the

interactive process, is misplaced here. (Appellants' Br. 53–54) (citing *Tynan*, 798 A.2d at 658). Unlike *Tynan*, Lilly did not ignore Tourtellotte's request and did not effectively force her to return to work without any accommodation. *See id.* Lilly told Tourtellotte that it could not guarantee that she would never come in contact with Rowland, and Tourtellotte has not presented any evidence indicating that this response to Tourtellotte's request was not made in good faith. (App. 1890a). As the District Court noted, Lilly engaged in the interactive process by "identif[ying] specific positions outside of Rowland's chain of command for [Tourtellotte] to consider. Yet [Tourtellotte] failed to apply for a single position during this period." (*Id.* at 22a). Tourtellotte's description of HR Representative Washburn's response to her request does not compel the result that Tourtellotte has demonstrated failure on the part of Lilly to make a good faith effort.[32]

---

[32] On appeal, Tourtellotte contends that at Washburn's deposition he admitted that it was possible to accommodate Tourtellotte's request. (Appellants' Br. 53–54); (App. 755a–756a). The disagreement between the parties as to exactly what Washburn told Tourtellotte does not foreclose the entry of summary judgment. The parties do not dispute that Tourtellotte's requested accommodation was to have no contact with Rowland. (*Id.* at 21a–22a). Lilly's response to this request does not demonstrate that Lilly failed to meet its burden in the interactive process. Tourtellotte does not present a genuine factual dispute as to whether Lilly's response constituted a reasonable accommodation. At his deposition, Washburn merely said he supposed it would be possible for Tourtellotte to have hardly any interaction with Rowland, except for email. (App. 755a–756a). This is not inconsistent with what Tourtellotte claims Washburn told her during her medical reassignment, which is that he could not guarantee she could avoid Rowland. (App. 1890a). Lilly presented reasonable accommodations by identifying positions outside Rowland's chain of command, while Tourtellotte refused to engage in the interactive process because the accommodation was not the specific one she requested. (App. 1896); *see Armstrong*, 438 F.3d at 247. As this Court has stated in *Armstrong*, "once an employer engages in the interactive process, both parties have an obligation to take part in the process in good faith." 438 F.3d at 249 n.15 (citing *Taylor*, 184 F.3d at 317). "An employer cannot be faulted if *after conferring with the employee to find possible accommodations,* the employee then fails to supply information that the employer needs

Accordingly, we will affirm the finding of the District Court granting summary judgment against Tourellotte on this claim.

### b. Reyes's Disability Discrimination Claim Under the ADA[33]

Plaintiffs pursuing discrimination claims must file a discrimination charge with the required agencies, including the EEOC, prior to filing in federal court. *Williams v. Runyon*, 130 F.3d 568, 573–74 (3d Cir. 1997). Reyes claims Lilly discriminated against her on the basis of disability in violation of the ADA. (App. 59a). The District Court found that Reyes did not exhaust administrative remedies for her disability discrimination claim because this claim was not within the scope of the EEOC complaint or the resulting investigation. (*Id.*). In the complaint Reyes filed jointly with the EEOC and PHRC, she checked off the boxes indicating her pursuit of discrimination claims on the basis of race and sex, but not disability. (*Id.*). The accompanying factual statement identified Reyes's

---

or does not answer the employer's request for more detailed proposals." *Id.* (quoting *Taylor*, 184 F.3d at 317) (internal quotation marks omitted). Tourellotte's insistence on a single unreasonable accommodation and rejection of all other possibilities renders Tourellotte the party responsible for the breakdown in the interactive process. *See Taylor*, 184 F.3d at 316 n.7; *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579-81 (3d Cir. 1998) (holding that an employee's request to be transferred away from co-workers who caused him stress was unreasonable as a matter of law because he failed to make a prima facie showing that his proposed accommodation was possible). Based on Tourellotte's undisputed refusal to apply for a single job during her sixteen-week medical reassignment period, even after Lilly's HR department identified two jobs outside Rowland's chain of command, a reasonable jury could not find that Tourellotte demonstrated Lilly's failure to engage in good faith.

[33] Reyes also claims discrimination based on failure to accommodate because Lilly did not respond to her request that she be assigned a new supervisor or she would not return to work. The District Court did not consider this basis for disability discrimination since the disability claim was dismissed for failure to exhaust administrative remedies. (App. 68a n.5). We do not reach this claim on the same grounds as those set forth by the District Court.

national origin and ethnicity, but did not indicate any specific bases for discrimination.[34]

Reyes contends that her references to "mental and physical distress," as well as medical leave and medication for anxiety could have reasonably notified the EEOC of a possible disability discrimination claim. (*Id.*; Appellants' Br. 48–49). We agree with the District Court that Reyes did not exhaust the administrative remedies for her disability discrimination claim because her complaint did not provide a basis from which the EEOC could reasonably have notice of such a claim.

Reyes's claim does not fail simply because she did not check the box indicating she wished to file a charge of discrimination on the basis of disability. As the District Court also noted, Reyes's claim fails because there is nothing in the factual statement filed with the charge that would make a disability discrimination complaint reasonably related to the EEOC charge. (App. 59a–60a). Our determination that Reyes did not exhaust administrative remedies with respect to this claim is based on her failure to provide any basis from which the EEOC could be on notice of her intent to bring a disability discrimination charge. Additionally, Appellants' insistence that *Hicks v. ABT Associates, Inc.* entailed a "virtually identical" process is inaccurate. (Appellants' Br. 49). In *Hicks*, this Court determined that there was an issue of material fact as to whether the

---

[34] Reyes wrote the following for the portion of the complaint asking for the complainant to identify themselves as it relates to the basis for discrimination: "I am Hispanic and a national from the Dominican Republic." (App. 59a) (internal quotation marks omitted). In the complaint Reyes described the harm resulting from the alleged discrimination as: "Due to Mr. Rowland's behavior, I have suffered mental and physical distress and loss of pay. I am currently on Medical Leave and am taking medication for anxiety as a result of this treatment." (*Id.*) (internal quotation marks omitted).

plaintiff had tried to amend his complaint, but which the EEOC improperly refused to allow. *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 964 (3d Cir. 1978). The issue in *Hicks* was whether summary judgment was proper when it was arguable that the Appellant had amended the complaint. *Id.* at 963–64. In the present case, Reyes made no attempt to, nor does she argue that she did, amend the complaint, or file an additional one. Looking at the factual statement provided, we will affirm the District Court's finding that Reyes failed to exhaust administrative remedies as to her disability discrimination claim.

5.     *Retaliation Claims Under Title VII and the PHRA*

Section 704(a) of Title VII states in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against [an employee] . . . because he has made a charge" of discrimination against the employer. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII and the PHRA[35], a plaintiff must produce "evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340–41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)) (internal quotation marks omitted). In assessing whether

_____

[35] With few exceptions, none of which apply here, the PHRA is applied in the same manner as Title VII. This Court has stated that the "aiding and abetting" provision in PHRA goes beyond the protections Title VII affords. As discussed *infra,* since we do not reach Appellants' claim that Rowland aided and abetted Lilly because we determine that Lilly has not violated any of the applicable statutes, we apply the *McDonnell Douglas* test to the claims brought under both statutes in a single analysis. *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).

there is a causal connection, this Circuit has focused on the temporal proximity of the protected activity and the adverse employment action, as well as whether or not there is a pattern of antagonism. *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 53. This Court has stated that the "retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson*, 120 F.3d at 1300. Accordingly, we use an objective standard, in which "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

If the plaintiff establishes a *prima facie* case, the analysis proceeds as described *supra* within the *McDonnell Douglas* framework, which applies to retaliation cases brought under Title VII and the PHRA. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192–93 (3d Cir. 2015). Once the employer provides legitimate, non-retaliatory reasons for its action, the burden shifts back to the employee, who must demonstrate, by the preponderance of the evidence, that the employer's proffered reasons were merely pretextual. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997). This Court has recognized two alternative ways by which a plaintiff can demonstrate pretext. *Atkinson*, 460 F.3d at 454. One, the plaintiff can provide evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." *Fuentes*, 32 F.3d at 762.

Two, the plaintiff can present evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.*

### a.    Tourtellotte

Tourtellotte claims that Lilly violated the NJLAD by retaliating against her for filing a complaint about Rowland with HR. (App. 26a–27a). The District Court found that Tourtellotte did not establish a *prima facie* case due to her failure to establish a causal connection between her grievance and her termination. (*Id.*). On appeal, Tourtellotte argues that the District Court erred in granting summary judgment against her retaliation claim for two reasons.[36] First, Tourtellotte asserts that the District Court mischaracterized the facts regarding her communications with Washburn. (Appellants' Br. 55). Second, Tourtellotte contends that the District Court held her to a heightened standard, which it did not apply to Reyes, whose retaliation claim was the only claim of the Appellants to survive summary judgment. (Appellants' Br. 56). Tourtellotte contends

---

[36] Tourtellotte also argues that the District Court erred in granting summary judgment against her on the retaliation claim because it usurped the role of the jury. As discussed *supra*, per Rule 56 and this Court's jurisprudence, a court does not err by granting summary judgment on a claim when it determines there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Because Tourtellotte has failed to meet her burden as the nonmoving party opposing summary judgment by demonstrating any genuine issue of material fact as to a causal link between her complaint and her termination, the District Court correctly entered summary judgment on this claim, which we will affirm.

Echoing the arguments of her co-Appellants, Krieger charges the District Court with improperly usurping the role of the jury in determining that she failed to prove that Lilly's nonretaliatory reason was pretext. (Appellants' Br. 58–59). For the reasons stated above in relation to Tourtellotte's claim, we reject this argument.

that the facts of her retaliation claim are "nearly identical" to Reyes's. (Appellants' Br. 56). Even construing the record in the light most favorable to Tourtellotte, the District Court correctly determined that Lilly's response to Tourtellotte's request complied with its obligation under the NJLAD. The second assertion over simplifies the nuanced specifics of each case, and the impact of Tourtellotte's actions while on medical reassignment, which were not present in Reyes's case.

Tourtellotte provides no facts supporting her allegation that Lilly placed her on medical reassignment for the purpose of terminating her employment. (Appellants' Br. 55). As discussed in the section *supra* on Tourtellotte's disability discrimination claim on the basis of failure to accommodate, Tourtellotte was responsible for the breakdown in the interactive process. Tourtellotte has not provided any other that would establish a causal link between her HR complaint and termination. For the reasons set forth by the District Court, we will affirm the grant of summary judgment against Tourtellotte on her retaliation claim. (App. 27a–28a).

### b.     Krieger

Krieger claims that Lilly retaliated against her in violation of Title VII and the NJLAD for filing a charge of discrimination with the EEOC and making two complaints against Rowland to HR. (*See id.* 35a–37a, 48a). The District Court did not make a finding that Krieger established a *prima facie* case of retaliation, but found that even if she was able to do so, her claim would fail at the pretext stage because Lilly provided a facially neutral reason for disciplining and ultimately terminating Krieger. (*Id.* at 48a–49a). Krieger has not produced any evidence that suggests Lilly's actions were pretextual and

not merely based on her numerous well-documented and self-admitted performance deficiencies, which resulted in a probationary period and two warnings issued in a year.

As the District Court correctly concluded, even if Krieger could establish a *prima facie* case of retaliation, Lilly's neutral reasons for disciplining and ultimately terminating Krieger are facially valid. Krieger admitted to engaging in the conduct that gave rise to the performance deficiencies meriting adverse employment action. (*Id.* at 49a). Krieger's assertion that her admitted misconduct and performance issues are pretext since other employees engaged in similar conduct and did not face discipline are bare assertions, and are insufficient under this Court's precedent to prove pretext. *See Fuentes*, 32 F.3d at 762. Pointing to the non-discipline of other employees, Krieger fails to demonstrate pretext under either of this Court's alternative theories. Krieger has not provided evidence that other employees, particularly those outside her protected class whom she references such as her male partner Puleo, have in fact committed substantially similar conduct and received no discipline. Her bare assertions about what has not happened in response to her coworkers' alleged deficiencies is not sufficient evidence to cast doubt on Lilly's proffered reasons. *Id.* Nor are these assertions evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Atkinson*, 460 F.3d at 454 (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108–09 (3d Cir. 1997)) (internal quotation marks omitted). Consequently, we will affirm the grant of summary judgment against Krieger on her retaliation claim. (App. 49a).

*c.*      *Reyes's Challenges to Evidentiary Rulings at Trial*

Reyes's retaliation claim was the only claim of Appellants to survive Lilly and

Rowland's renewed motions for summary judgment and reach a jury. Reyes challenges

two of the District Court's evidentiary rulings at trial. One, Reyes challenges the District

Court's denial of her *motion in limine* to include evidence of Rowlands's conduct

towards other employees. (Appellants' Br. 61–62). [37] At trial, the District Court restricted

introduction of evidence about Rowland's conduct towards others to that which Reyes

personally observed. (App. 1990a–1992a). Reyes asserts that at sidebars during the trial

she attempted to make offers of proof as to why the court should admit evidence of

similarly situated individuals and Lilly's failure to properly investigate her claims.

(Appellants' Br. 62 & n.14). Two, Reyes challenges the District Court's admission, to

which she objected at trial, of Lilly's direct examination of Brian Rafferty, Rowland's

supervisor, about the coaching provided to Rowland in response to the HR investigations.

(Appellants' Br. 64–65). At sidebar, Reyes's counsel contended that the direct

---

[37] Appellee Lilly asserts that the denial of this *motion in limine* is not appealable as a final order under 28 U.S.C. § 1291 and rather is merged into the December 16, 2014 jury verdict. We disagree. This Court reviews final rulings by a district court on *motions in limine* made definitively on the record. *See, e.g., Forrest v. Beloit Corp.*, 424 F.3d 344, 348–49 (3d Cir. 2005); *United States v. Peppers*, 302 F.3d 120, 137–39 (3d Cir. 2002). Here, the District Court made a final ruling on Reyes's *motion in limine*, which was part of the January 29, 2014 order. (App. 4a–5a).

Appellee Lilly also contends that Reyes's attempt to incorporate the *motion in limine* by reference does not satisfy Federal Rule of Appellate Procedure 28. (Appellee Lilly's Br. 53 n.11) (citing Appellants' Br. 61 n.13). Appellants cite the specific pages of the record in the Appendix containing the *motion in limine*, as required by Federal Rule of Appellate Procedure 28(e) and are not in violation of this rule. (Appellants' Br. 61 n.13).

examination of Rafferty was an attempt to illicit testimony about complaints made by other employees, which was barred by the District Court's prior evidentiary ruling. (App. 1464a, 1479a–1480a). In the same order denying Reyes's *motion in limine* to include evidence, the District Court granted Lilly's *motion in limine* to exclude evidence of alleged inappropriate incidents unrelated to Reyes' claim experienced by former plaintiffs, namely are her co-Appellants. (*Id.* at 4a–5a).

The standard of review for the admission or exclusion of evidence is generally abuse of discretion. *Walden*, 126 F.3d at 517. If a party fails to preserve an evidentiary ruling, this Court reviews for plain error. [38] *Id.* Evidentiary issues are properly preserved when the moving party makes offers of proof during trial to admit or object to evidence. *Northeast Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1352–53 (3d Cir. 1989). Pursuant to Rule 61, we will not remand or reverse if the admission or exclusion of evidence constituted harmless error. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995). An error is harmless "only if it is highly probable that the error[] did not affect the outcome of the case." *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (alteration in original) (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 917 (3d Cir. 1985)) (internal quotation marks omitted). Additionally, Rule 61

---

[38] This Court has cited the three requirements that the United States Supreme Court requires for a plain error challenge: "First, there must be an actual error—a deviation from or violation of a legal rule. Second, the error must be plain; that is, the error must be clear and obvious under current law. Finally, the error must affect substantial rights." *Walden*, 126 F.3d at 520 (citing *United States v. Olano*, 507 U.S. 725, 732–34 (1993)). For a plain error challenge to an evidentiary ruling to succeed, the appealing party must demonstrate that the error was both prejudicial and affected the outcome of the proceedings below. *Id.*

provides that harmless error is any error that does not affect "any party's substantial rights." Fed. R. Civ. P. 61.

Assuming that Reyes properly preserved her objections to the evidentiary ruling on her *motion in limine*, we review both challenges for abuse of discretion.[39] Reviewing under this standard, we cannot say that the District Court abused its discretion by excluding Reyes's evidence and admitting Lilly's. *See Abrams*, 50 F.3d at 1213. In her brief, Reyes only describes the evidence precluded by the denial of her *motion in limine* in very general terms, stating that the District Court "prohibited all evidence described [in this brief] regarding the seven women that complained to Lilly about Rowland." (Appellants' Br. 62). Other than general statements that the evidence would bear on Rowland's motive, Reyes does not describe how the exclusion of this evidence affected the outcome of her trial. (*Id.*). As Reyes noted, this Court has stated that a "plaintiff may rely upon a broad array of evidence to demonstrate a causal link, [including evidence of] ongoing antagonism, inconsistent reasons for termination, and certain conduct towards others." (Appellants' Br. 63) (alteration in original) (quoting App. 71a) (internal quotation marks omitted) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284

---

[39] Appellee Lilly argues that Reyes failed to preserve her objection to the evidence she wished to admit through her *motion in limine* by not making individual offers of proof on this evidence at trial, necessitating review for plain error. Citing the record, Reyes disputes Lilly's assertion. (Appellants' Br. 62 n.14). We assume, for the purposes of this appeal, that Reyes properly preserved this objection. Even under the less stringent abuse of discretion test, Reyes's challenge fails since she has not demonstrated that this ruling affected her substantial rights in terms of the outcome of the case.

Reyes objected to Lilly's direct-examination of Rafferty at trial so we review this ruling for harmless error. *Abrams*, 50 F.3d at 1213; (App. 1464a–1484a).

(3d Cir. 2000)). However, this does not require that a trial court admit such evidence when it is, in the discretion afforded the court, not in accordance with the rules of evidence, such as threshold requirements of relevance and first-hand knowledge. Reviewing under this highly deferential standard, Reyes's challenge fails because she has not demonstrated how this ruling impacted her ability to establish her case. This renders any error harmless. *See Abrams*, 50 F.3d at 1213 (citing Fed. R. Civ. P. 61). Under the abuse of discretion standard, we will affirm the District Court's denial of Reyes's *motion in limine*.

With respect to Reyes's challenge to the contents of Rafferty's direct examination about the coaching provided to Rowland, Reyes states that the denial of her *motion in limine*, coupled with the admission of this evidence by Lilly, was "doubly prejudicial." (Appellants' Br. 65). In support of this, Reyes only asserts that this evidence could allow the jury to assume that Rafferty only coached Rowland on Reyes's complaints and not others, but does not state how this impacted her ability to establish her case. (*Id.* at 64–65). Additionally, the District Court allowed Reyes to cross-examine Rafferty on the complaints, mitigating both her concerns about some of the evidence she wished to include in her *motion in limine*, as well as any negative impact of Rafferty's testimony. (App. 1482a–1484a). Reviewing for harmless error, we cannot say that the District Court abused its discretion in admitting this evidence, which Reyes has not demonstrated affected her substantial rights. Accordingly, we will affirm the challenged admission.

### 6. Claims Against Rowland

Tourtellotte and Krieger claim that Rowland violated the NJLAD by aiding and abetting Lilly's violations of the relevant statutes.[40] (Appellants' Br. 4). These Appellants only name Rowland jointly with Lilly for their NJLAD claims and for Krieger's § 1981 claim. (Appellee Rowland's Br. 26). Since none of the Appellants have established a *prima facie* case for any of their claims against Lilly, Rowland cannot be individually liable. The NJLAD does not provide for individual liability for aiding and abetting if the employer is not found liable. *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008) (citing N.J. Stat. Ann. §10:5–12(e)). Accordingly, we will affirm the District Court's grant of summary judgment in favor of Rowland on all claims and do not reach the merits of Appellants' claims. (App. 6a).

While we agree with the District Court that many of Rowland's actions were "inexcusable and offensive," none of the alleged conduct rises to the level of unlawful discrimination. (*Id.* at 30a).

### III.    Conclusion

For the foregoing reasons, we will affirm the final judgments of the District Court on appeal before us.

---

[40] Reyes did not name Rowland as a defendant in her complaint for any claims.